Crawford *vs.* The State.

No. 26.—JAMES CRAWFORD, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] Where it appeared that a homicide was committed after dark, and it was somewhat doubtful whether the defendant had stricken the fatal blow: *Held*, that it was competent for the defendant to prove at the trial, that just after dinner, the evening deceased was killed, two other persons and deceased had a quarrel at the same place where the homicide was committed; especially, as defendant and deceased were shown to have been on *friendly* terms, but a short time before the killing took place.

[2.] When the examination of a witness in a criminal trial is taken down in writing, as required by Statute, it is the right of either party, to have the evidence so taken down, read over to the witness for his correction or approval, before such witness leaves the stand.

[3.] Whenever the Judge, during the progress of a trial, expresses his opinion in regard to the evidence of a witness, by saying "never mind reading over the testimony taken down on cross-examination, it does not amount to much any way," it is error, and this Court is bound to reverse the judgment and grant a new trial, according to the provisions of the Act of 1850.

[4.] After the evidence had closed on both sides, a witness who had been examined on the part of the State, made application to the Court privately to be permitted to state an additional fact, in order to strengthen the testimony against the defendant, which fact the Court announced in the presence and hearing of the Jury: *Held*, that notwithstanding the Court rejected the application of the witness, it was error for the Court to have announced the fact in the hearing of the Jury, as it was calculated, under the circumstances, to prejudice the rights of the defendant, and that the Court ought to have promptly rejected the application of the witness, and said nothing about it at that time.

[5.] Where, on a trial for murder, the defendant introduced no evidence, and the Court charged the Jury, among other things, "that if they believed from the evidence, that the prisoner struck the fatal blow that killed deceased, then the law imposed on him the obligation to show he was justified in so doing, and makes the killing murder, and it is *on the prisoner to produce evidence* of justification, to reduce the crime to manslaughter, or justifiable homicide, if he could by proof:" *Held*, that this charge was erroneous, and that the circumstances of justification, or of mitigation, might as well be made to appear from the evidence on the part of *the prosecution*, as from evidence produced *by the defendant*.

[6.] When a defendant is put upon his trial for murder, and there is any doubt as to the grade of homicide of which he is guilty, it is the duty of

Crawford *vs.* The State.

the Court clearly and distinctly to instruct the Jury as to the law, defin-
ing the several grades of homicide, as recognized by the Penal Code, and
then leave it to the Jury to find from the evidence of what particular
grade he is guilty.

Indictment for murder, in Bibb Superior Court.    Tried before
Judge POWERS.    May Term, 1852.

At the May Term, 1852, of Bibb Superior Court, James
Crawford was put on trial for the killing of Evan Moore.

It appeared from the evidence, that the killing for which the
defendant was indicted, occurred about night-fall on the 23d
December, 1851, at a grocery in the city of Macon.    There
was no positive evidence, going to show that the defendant was
the person who struck the blow, from which the physician testi-
fied that the deceased came to his death.

John Fennill, was sworn by the State, and on his cross-ex-
amination testified, " that just after dinner, the evening Moor
was killed, Levi G. Bright, Daniel J. King and deceased, had a
quarrel at witness's grocery, at the wagon yard, about a dollar;
witness told them to hush it up, and they did so."    At this point,
the Solicitor General stopped the witness, and moved the Court
to rule out the testimony, on the ground that the same was
irrelevant.

The Court sustained the motion, and defendant excepted.

Charity Moore was sworn by the State, and when her cross-
examination was concluded, counsel for defendant proposed
to have her testimony (taken down on the cross-examination,)
read over to her for correction and approval; which, the Court
refused, remarking at the same time, in the presence of the Jury,
"never mind reading over the testimony taken down on cross-
examination, it does not amount to much any way."

To which ruling and remarks by the Court, defendant ex-
cepted.

After the State had closed its evidence, and defendant had an-
nounced that he would introduce none, and before the argu-
ment had commenced, " the witness Fennill came back into
Court, and stated to the Court, that he wished to correct his tes-

timony; at the same time, stating to the Court and in his hearing only, in what the corrections consisted. The Solicitor General moved the Court to have the correction made. Defendant objected. The Court refused the motion, but at the same time stated, in the presance and hearing of the Jury, the correction proposed to be made—which was, "that when witness Fennill asked deceased who hurt him, and deceased replied that he knew who did it, and would have satisfaction; witness then asked deceased if it was some one that went off with the wagon, and deceased replied it was."

To which announcement by the Court of said proposed correction, defendant excepted.

Among other things, the Court charged the Jury, "that if they believed from the evidence, that prisoner struck the fatal blow that killed the deceased, then the law imposed on him the obligation to show that he was justified in so doing, and makes the killing murder; and it is on the prisoner to produce evidence of justification, and to reduce the crime to manslaughter or justifiable homicide, if he could by proof." "That it was for them to decide whether there was any evidence showing that prisoner was justified in giving the blow—was it lawful to give it? had any assault been made on him? did he stand in reasonable fear of his life? For without the act was lawful in some way, the result could not be this kind of manslaughter. The issue was a plain one, and did prisoner strike the blow that caused the death of the deceased, and if so, was he justified in so doing?"

The Court charged the Jury, that if they had a reasonable doubt as to the guilt of the deceased, they must give him the benefit of that doubt, and acquit the prisoner; but that this must not be a doubt founded on mere fancy or caprice, but a reasonable doubt, such as a sensible, honest-minded man would reasonably entertain from the evidence. Doubts were not intended by law for the Jury to acquit prisoners; that is, the unfounded and imaginary doubt as before alluded to.

To which charges, counsel for defendant excepted, and upon these several exceptions, have assigned error.

Crawford *vs.* The State.

LAMAR & LOCHRANE, POE and HILL, for plaintiff in error.

Sol. Gen. DEGRAFFENREID, for the State.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first ground of error assigned in this case is, the rejection of that portion of the testimony of John Fennill, drawn out by the cross-examination, in which he stated, that "just after dinner the evening Moore was killed, Levi G. Bright, Daniel J. King and deceased had a quarrel at witness' grocery, at the wagon yard, about a dollar; witness told them to hush it up, and they did so." In view of the facts of this case, we think this evidence was competent to show that there had been *cause of quarrel* between the deceased and *other persons*, on the evening of the same day the deceased was killed ; the more especially as it appears that the deceased and prisoner were on friendly terms but a short time before he received the fatal blow, and it being somewhat doubtful from the evidence who struck that blow, that it was a circumstance, of which the Jury were entitled to consider, in favor of the defendant.

[2.] The second ground of error is, the refusal of the Court to have the cross-examination of Charity Moor, which had been taken down in writing under the Statute, read over in her hearing for her correction or approval, at the request of prisoner's counsel; the Court remarking at the same time, in the presence and hearing of the Jury, " never mind reading over the testimony taken down on cross-examination, *it does not amount to much any way.*" It was the right of either party to have the testimony of the witness read over in her hearing, in order that she might correct or approve it, as it was taken down in writing ; the more particularly if either party entertained any doubt that it had been incorrectly taken down, or not taken down at all. The testimony of the witnesses' is as it is taken down in writing at the time of the examination, usually constitutes the *criterion* when counsel differ as to what has or has not been proved, and therefore, it is always important that it should be correctly taken down, in

VOL. XII 19

the sense which the witnesses delivered it, and not in a *different* sense.

This object can best be accomplished by reading it over to the witness before he or she leaves the stand, when all the facts are fresh in the recollection of the counsel, the Court and the witness, so that all necessary explanations, corrections or omissions may then be made or supplied.

[3.] By the first section of the Act of 1850, it is expressly declared, "that it shall not be lawful for any or either of the Judges of the Superior Courts of this State, in any case, whether civil or criminal, or in Equity, *during its progress*, or in his charge to the Jury, to express or intimate his opinion, as to what has or has not been proved, or as to the guilt of the accused." The 2nd section of the Act makes it obligatory on the Supreme Court, in all such cases, to reverse the judgment and grant a new trial. 1 *Cobb's Dig.* 462. The evidence of Charity Moore, on her cross-examination, was either *competent* testimony, or it was not. If incompetent, then it ought to have been rejected by the Court; if competent, then the defendant was entitled to the full benefit of it before the Jury, without any *disparagement of it by the Court.* Here the Court did not merely *intimate* its opinion, but expressly declared, *during the progress of the cause*, in the presence and hearing of the Jury, that the testimony of Charity Moore, on her cross-examination, "*did not amount to much any way.*" The weight and credit to which that testimony was entitled, was *exclusively* a question for *the Jury*, and not a question for *the Court*, and is clearly within the prohibition of the Act of 1850.

[4.] The next ground of error taken is, that after the evidence for the State had closed, and after the prisoner's counsel had announced to the Court that he would not introduce any evidence, John Fennill, a witness who had been sworn and examined on the part of the State, went to the presiding Judge, and told him *privately*, that he wished to make a correction in his testimony, (to wit), that when witness asked deceased who hurt him, deceased replied he knew who did it, and would have satisfaction; "*witness then asked deceased, if it was some one that*

*went off with the wagon, and deceased replied that it was.*" This additional fact was most *material* against the defendant. The evidence shows that the defendant was standing near the wagon when the blow was stricken, and that immediately afterwards the defendant and his brother drove off in the wagon. The witness on his examination, said nothing about the additional fact which he subsequently desired to state. This was not a *correction* of his testimony which he had previously delivered on oath, strictly speaking, but was the statement of an *additional, distinct, material fact*. After the State had closed its evidence against the defendant, and the cause was submitted to the Jury on both sides, it was not competent for the State to introduce in evidence any new or additional fact. *Judge vs. The State, 8th Georgia Rep.* 173.

The question as to who struck the deceased the fatal blow, was left in doubt, and the introduction of this additional fact would have tended directly to remove that doubt, by proving that it was some one who went off with the wagon that did it. In this state of the case, the witness applies to the Court to be permitted to state the additional fact, which fact the Court announced in the presence and hearing of the Jury. As a matter of course, the Solicitor General insisted that it should be received, and the counsel for the prisoner *objected*, and it was not received; but the question is, whether it was not error for the Court to announce the additional statement which the witness desired to make, in the presence and hearing of the Jury, and whether the defendant was not *prejudiced* by it? The duty of the Court, under the circumstances, we think, was a plain one. The witness ought to have been *promptly* told by the Court, that the additional fact could not *then* be proved, and to have said nothing about it to the counsel, or in the hearing of the Jury; for the simple reason that the application was to be permitted to do an illegal act, as had been already adjudicated by this Court, in the case of *Judge vs. The State*. This was not an application by the witness to make a *correction* of his testimony *already delivered*, but was an application to state an *additional* and *material fact*, to which he *had not previously testified*. After the case

had been submitted to the Jury on the evidence, both by the State and the defendant, that the defendant was prejudiced or might have been prejudiced by the announcement made by the Court before the Jury as to what the witness desired to state, is quite apparent, in our judgment. The witness had been *sworn* and examined in the cause; the State had failed to make out an important link in the chain of testimony to convict the defendant beyond a reasonable doubt, as to the *identity* of the person who struck the fatal blow at the wagon; the witness comes into Court, and the Court announces that the witness desires to make the additional statement, "that it was some one who went off in the wagon that hurt him"—thereby supplying that important link in the chain of testimony, which, although refused by the Court on the objection of the defendant's counsel, could not have failed to have produced its effect on the minds of the Jury, to the *injury* of the defendant.

[5.] The last ground of error insisted on in this record is, to the charge of the Court to the Jury. The Court charged the Jury, among other things, "that if they believed from the evidence, that prisoner struck the fatal blow that killed deceased, then the law imposed on him the obligation to show he was justified in so doing, and makes the killing murder, and it is *on the prisoner to produce evidence* of justification, to reduce the crime to manslaughter, or justifiable homicide, if he could *by proof.*"

We are clearly of the opinion, this portion of the charge of the Court is erroneous, and especially so in view of the facts of this case. The defendant introduced *no evidence* at the trial; the only evidence before the Court and Jury was introduced on the part of the State. Upon this state of facts, the Court charged the Jury, that it was on *the prisoner to produce evidence* of justification, to reduce the crime of murder to manslaughter, or justifiable homicide, if he could *by proof.* Now, as the defendant produced *no evidence* or any *proof* of justification, or mitigation of the highest grade of homicide on *his part* at the trial, the Jury were bound, under the charge of the Court, to have found him guilty of the crime of murder, if he struck the fatal blow which killed

Crawford *vs.* The State.

the deceased; notwithstanding the evidence produced on the part of the State, might have made out a clear case of manslaughter, or justifiable homicide. The fatal error in the charge of the Court is, that the *prisoner* is required to *produce evidence* of mitigation or justification on his part, to reduce the crime of murder to any of the inferior grades of homicide; whereas, the mitigation or justification, may as well be shown by the evidence on the part of the State, as by *proof* introduced by *the prisoner*. If the defence is made out by the witnesses on the part of the *prosecution*, then the defendant need not call any; but if not, then the defendant must call witnesses, and make out his defence by proof. *Archibald's Criminal Pleading*, 213. The Court below should have instructed the Jury in this case according to the rule stated by this Court in *Davis vs. The State*, 10 *Georgia Rep.* 102. Did the evidence establish the fact that the defendant committed the homicide? and if so, what grade of the offence does it show it to have been? Was it murder, voluntary manslaughter, involuntay manslaughter in the commission of an unlawful act, involuntary manslaughter in the commission of a lawful act, without due caution and circumspection, or justifiable homicide?

[6.] Whenever there is any doubt as to the *grade* of the offence, it is the duty of the Court clearly and distinctly to instruct the Jury as to the law, defining the several grades of homicide, and then leave the Jury to find from the evidence, of what particular grade the defendant is guilty. As it respects the charge of the Court in regard to a reasonable doubt, we find no error; that charge was a substantial compliance with the law, as we understand it.

Let the judgment of the Court below be reversed, and a new trial granted.