## WALL v. THE STATE.

1. Where one without malice, and not under such circumstances as would justify or excuse the killing, voluntarily kills another, being impelled so to do by that sudden violent impulse of passion supposed to be irresistible, produced by some actual assault upon the person killing or an attempt by the person killed to commit a serious personal injury upon the person killing, or by other equivalent circumstances sufficient to

justify the excitement of such passion, then the homicide would be voluntary manslaughter. The evidence in this case discloses such facts as would authorize the jury to conclude that the accused took the life of the deceased under such circumstances as to make him guilty of the offense above named.

2. The objection to a juror that his name does not appear in the jury box, being an objection propter defectum, must be made when the juror is put upon the accused, and, if not then urged, will not afterwards avail as a ground of a motion for new trial. The evidence submitted seeking to impeach the juror discloses no reason why he should not have served, except that his name was not in the jury box. The court having so found, it was not erroneous for the court to refuse to grant a new trial on the ground of disqualification of the juror.

3. The mental incapacity of a juror is not ground of objection propter defectum, and may be urged after verdict as a ground, if not known to the accused at the time of accepting him, and may constitute a good ground of a motion for new trial. In such case the judge, upon hearing the motion for new trial, will hear evidence, and in the light of the evidence it is his duty to pass upon the competency of the juror. The evidence introduced relative to the mental condition of the juror Platt in the present case was sufficient to authorize the court to find him competent.

4. Where a juror is sought to be impeached after verdict, upon the ground that he was prejudiced against the accused, the judge, in passing upon the motion for new trial, will hear evidence upon the ground of impeachment, and if the evidence sustains the ground of impeachment, a new trial should be granted. But in this case the evidence upon that question is sufficient to justify the court in holding the juror competent, and there was no error in refusing to grant a new trial upon that ground. As to whether the voir dire act of 1856 (Acts 1855-56, p. 231), where the disqualification of the juror resulted from the formation "or" expression of an opinion, has been changed by subsequent legislation, so as to make the disqualification result from the formation "and" expression of an opinion, it is not necessary here to decide.

5. There was no such error in the various extracts from the charge of the court on which error is assigned, or in the refusal of requests to charge, or in any other ruling of the court, as would authorize a judgment of reversal for any reason assigned. The evidence authorized the verdict, and having received the approval of the trial judge, the judgment refusing a new trial will not be reversed.

Argued October 15,—Decided November 7, 1906.

Indictment for murder. Before Judge Hammond. Richmond superior court. July 3, 1906.

*Austin Branch* and *J. R. Lamar,* for plaintiff in error.

*J. S. Reynolds,* solicitor-general, and *Salem Dutcher,* contra.

ATKINSON, J. 1. The defendant was not convicted of murder, and it is not necessary to discuss the case upon that theory. He

was not acquitted, and we may at once inquire if there was error in failing to acquit. It is contended that he should have been acquitted, first, because the accused shot, in self-defense; second, because he shot under the fears of a reasonable man that the deceased was about to commit a felony upon his person. The establishment of either of these defenses ought to accomplish his acquittal. But the jury are the judges of the facts, and, upon evidence sufficient to support their finding, they have found that the deceased did not shoot in self-defense or under the fears of a reasonable man. The presiding judge has approved that finding, and we see no ground to set his judgment aside. The defendant was convicted of voluntary manslaughter, and the main question is, does the evidence support this conviction? It is not disputed that he took the life of the deceased by means alleged in the indictment. The killing was voluntarily accomplished by shooting. If the shot was fired, not with what the law defines as malice, and not under such circumstances as would justify or excuse the killing, but as the result of that sudden violent impulse of passion supposed to be irresistible, produced by some actual assault upon the person killing, or by an attempt by the person killed to commit a serious personal injury on the person killing, or by other equivalent circumstances, sufficient to justify the excitement of such passion, then the homicide would be voluntary manslaughter. Upon this theory of the case the evidence is conflicting, but in our opinion there is sufficient evidence to support the verdict. From the testimony of one of the witnesses for the State, there were opprobrious, unprovoked words addressed by the accused to the deceased. The insult was resented by an actual and violent battery, followed by the retreat of the accused, pursued by the deceased in a violent manner, until the firing was accomplished and the deceased staggered and fell. The jury may have been of the opinion that the battery was disproportioned to the offense given, and that the pursuit of the defendant afterwards by the deceased was unjustified and amounted to the "actual assault" contemplated in the law of voluntary manslaughter, and they may have found that the assault did produce sudden and irresistible passion in the breast of the accused which impelled him to fire the fatal shot. The jury are the exclusive judges of the emotions and passions of the accused at the time of the fatal rencounter, and if, under the evidence in this case, they

were of the opinion that the defendant inflicted the mortal wound impelled by passion such as described, produced in the manner indicated, without any mixture of malice, and not under circumstances which would justify or excuse the homicide, the only proper verdict was that finding the defendant guilty of voluntary manslaughter. See, in this conection, *Jenkins* v. *State,* 123 *Ga.* 527; *Williams* v. *State,* 125 *Ga.* 304.

2. The motion for new trial, among other things, complained that E. L. Anderson was a qualified juror, as appeared from the jury list of the county, and that A. A. Anderson appeared in his place and was accepted as a juror, and that A. A. Anderson was not in the jury box. This ground is supported by the affidavits of counsel and the accused, both of whom swore that they did not know of this substitution until after the verdict. In reply the State introduced affidavits of certain persons, in effect as follows: (*a*) Affidavit of A. L. Anderson, to the effect that he was summoned by the sheriff, under that name (a copy of the summons being attached to this affidavit), and that whenever his name was called it was called as A. L. Anderson, and that he answered to that name; that he was acquainted with B. C. Wall, the father of the accused, and had been acquainted with him for two years; that he met him and spoke to him in the court-house before he was sworn as a juror; that at the time he was placed upon voir dire, B. C. Wall, the father of the accused, was sitting with the accused and his counsel. (*b*) An affidavit of B. W. Anderson, the father of A. L. Anderson, to the effect that his full name was Artemus Lazenby Anderson, that he was 23 years of age, and had lived in Richmond county all his life. From these affidavits, the judge could find that the juror who appeared and was selected was A. L. Anderson, and not A. A. Anderson, and that the accused knew him to be A. L. Anderson at the time he was selected. Under such circumstances, the only objection to the juror was that his name was not in the jury box; and this, being propter defectum, will not avail as ground in the motion for new trial. See *Jordan* v. *State* 119 *Ga.* 443, and cases cited on page 446.

3. The motion for new trial makes complaint that John A. Platt, who served on the jury and participated, was not competent mentally to act as a juror, and said incompetence was unknown to defendant and his counsel, nor had defendant and his counsel any op-

portunity for discovering or any reason for suspecting said incompetence until after the verdict. Certain affidavits were attached, pro and con, upon the subject of the juror's mental condition. From the evidence introduced on this subject, the judge was authorized to find that the juror was mentally competent; and therefore there was no abuse of his discretion in overruling this ground of the motion for new trial. See, in this connection, *Hicks* v. *State*, 126 *Ga.* 80. While citing this case the writer does not mean to recede from his dissent as noted in the report. The facts of the cases are different in several respects, only one of which need be mentioned. In the present case, the evidence was sufficient to support the finding of the judge that the juror was competent, while in the case cited it was and is the opinion of the writer that the evidence demanded a finding by the judge that the juror was not competent.

4. In the motion for new trial, the defendant complains that George S. Street served as a juror and participated in the verdict while he was not a qualified juror, because his mental condition was not fair and impartial between the State and the accused, and because there was prejudice and bias resting in his mind against the accused, which prejudice and bias was altogether unknown and unsuspected by the accused and his counsel, and they had no reason to suspect the same until after the verdict. Affidavits were submitted pro and con upon the question of his bias, prejudice, and partiality. The Penal Code of 1833 provided that one who had seen the crime committed, and had formed "and" expressed an opinion as to the guilt of the accused, was an incompetent juror. This seems to have been true also under the voir dire act of 1843 (see Acts 1843, p. 137). By the act of 1856 (Acts 1855-56, p. 231), the disqualification resulted from the formation "or" expression of an opinion. This was the law at the time that the Code of 1863 was adopted. The provision in that code restores the word "and" and leaves the law as it stood prior to the act of 1856. Whether this was a deliberate change back to the old law, or simply an inadvertent use of the word "and" when there was an intention simply to codify the act of 1856, need not be decided in this case. The witness swore that he did not see the crime. This fact was, however, in issue, as there was an affidavit by a party who said that Street had admitted that he saw the crime committed. Street swore

positively that he had neither formed nor expressed any opinion in regard to the guilt of the accused. There was no issue on this question. His answer on the voir dire was that he had not formed "and" expressed, and his affidavit read on the motion for new trial was that he had not formed "or" expressed an opinion. The judge was required, therefore, to hold that he was a competent juror, without reference to whether the disqualification was the formation and the expression of an opinion, or the formation or expression of an opinion. Under this view it is unnecessary to determine the question as to whether the act of 1856 has been changed by subsequent legislation.

5. There are numerous assignments of error upon various extracts from the charge of the court. There were also a number of assignments of error upon the refusal of certain requests to charge, duly presented to the judge, and also exceptions to other rulings of the court. These requests, so far as legal and pertinent, were all in substance covered by the general charge. Even if any of the extracts from the charge upon which error is assigned are subject to the criticism made upon them, or if there was error in any of the other rulings made, the error therein was not in any instance of such a grave nature as to require a reversal of the judgment of the court below.

*Judgment affirmed. All the Justices concur.*