## 43816. THOMAS v. THE STATE.

ARGUED JULY 2, 1968—DECIDED SEPTEMBER 3, 1968—

REHEARING DENIED SEPTEMBER 18, 1968—

*Frank B. Hester, Richard M. Hester,* for appellant.

*Lewis R. Slaton, Solicitor General, J. Walter LeCraw, J. Robert Sparks, Tony H. Hight,* for appellee.

HALL, Judge. 1. The defendant enumerates as error the overruling and denying of his challenge to qualifications of panels, challenge to polls and array and his objections to excusing of jurors opposed to capital punishment. On June 3, 1968, the Supreme Court of the United States held that a death sentence cannot constitutionally be executed if imposed by a jury which by law is given broad discretion to choose between life imprisonment and capital punishment, when all persons on the panel who are opposed to capital punishment or have conscientious scruples against imposing the death penalty have been removed as disqualified for that reason alone. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (decided June 3, 1968). However, on the same date the court held in another opinion that this principle had no application in a case where the jury did not impose the death penalty. Bumper v. North Carolina, 391 U. S. 543 (88 SC 1788, 20 LE2d 797). The trial court did not err in the above rulings.

2. The defendant enumerates as error the overruling of his motion to suppress evidence made in writing after the State had rested its case. The ground of the motion was that the defendant's residence had been illegally searched by the police without a warrant, evidence seized and photographs made of the premises in violation of the defendant's constitutional rights, and that prior to the testimony of a detective the defendant had no knowledge whatever of the illegality of the search and seizure.

The Georgia Search and Seizure Law of 1966 does not expressly provide the time when the motion must be made. However, this court has held that the motion must be timely made or else it is waived. Gilmore v. State, 117 Ga. App. 67 (159 SE2d 474); Brannen v. State, 117 Ga. App. 69 (159 SE2d 476); Watts v. State, 117 Ga. App. 558 (161 SE2d 516). The State contends that it must always be made prior to trial. We disagree.

The Georgia law, while not identical, is similar to Rule 41 (e) of the Federal Rules of Criminal Procedure. That rule expressly provides that the motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. "At least, the motion must be made before the testimony is begun if defendant knows

of the unlawful seizure and has had the opportunity to present the question in advance of trial." 11 Cyclopedia of Federal Procedure (3rd Ed.) 591, § 44.49. The rule is merely a restatement of previous federal decisions. Agnello v. U. S., 269 U. S. 20 (46 SC 4, 70 LE 145, 51 ALR 409). Its purpose is to avoid the interruption of the trial for the purpose of investigating the collateral issue of the legality of the means by which the evidence was obtained. 50 ALR2d 583. However, it is not "a narrow, finicky procedural requirement" in that "the court in its discretion may entertain the motion at the trial or hearing." Jones v. U. S., 362 U. S. 257, 264 (80 SC 725, 4 LE2d 697, 78 ALR2d 233).

In our opinion the above principles are applicable to the Georgia statute.

Whether or not the defendant's motion was timely, however, the evidence was not subject to suppression. It appears from the record that after the deceased was wounded the defendant and his son drove her to the office of a physician and then to the hospital. When the deceased died shortly after arrival at the hospital the attending physician directed a hospital employee to call the police "because it looked like it should be a coroner's case." The officer patrolling in the area of the deceased's residence received a police radio call signaling that a person was injured at the residence. This was followed by a radio call that the victim was at Piedmont Hospital. A police detective received a radio call to go to the hospital. The patrol officer and detectives went to the hospital. One of the detectives arrested the defendant and told him he was suspected of murder. The patrol officer then went to the residence, *found the door open*, went in the house and found no one there, and went back to his car and waited for the detectives and for children of the deceased who he stated he had been told were on their way. This officer stated that the deceased's son had requested at the hospital that he go back to the house and prevent his brothers and sisters seeing the room his mother had been in; the son denied this. Three other officers went from the hospital to the house, entered, took photographs, and took things from the house that the State used as evidence at the trial. The officer

directing the investigation at the house testified that when he left the hospital the defendant was in the custody of the arresting officer, and that his authority for entering the house was that he had heard the call on the police radio to the patrol officer signaling a person had been injured there, and the following call that the victim was at the hospital; that at the hospital he met the patrol officer, who left the hospital stating he was going to the residence, that he didn't know whether there was someone else injured, or who had called or whether the call had been placed from the home.

The issue is whether in these circumstances the search without a warrant at the scene of the suspected crime, the residence of the person under arrest for suspicion of murder, was reasonable. It is not questioned that the defendant was lawfully arrested. We recognize that the defendant's right of privacy is protected against unreasonable invasion by the Fourth Amendment. Warden v. Hayden, 387 U. S. 294, 305, 307 (87 SC 1642, 18 LE2d 782). This is not a case like McDonald v. U. S., 335 U. S. 451 (69 SC 191, 93 LE 153), however, in which the officers had had the defendant under surveillance for about two months at his house and no reason for failure to seek a search warrant appeared. Moreover, the fact of an interval of time between the arrest and the search does not render the search invalid. The relevant factor is the extent to which effective law enforcement would be frustrated by requiring the police to obtain a search warrant. The practicability of procuring a search warrant is not "a *sine qua non* to the reasonableness of a search. . . Some flexibility will be accorded law officers. . . Upon acceptance of [the] established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant. . . Whether the search was reasonable . . . depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." U. S. v. Rabinowitz,

339 U. S. 56, 65; Cooper v. California, 386 U. S. 58, 62 (70 SC 430, 94 LE 653). It cannot be said that in the facts and circumstances of this case the place that could reasonably be subjected to search was "to be determined by the fortuitous circumstance that the arrest took place" at a different place than the search or by the fact that the place searched was the defendant's dwelling place. There is no indication that the search "went beyond that which the situation reasonably demanded," but it appears to have been "specifically directed to the means and instrumentalities by which the crimes charged had been committed." Harris v. U. S., 331 U. S. 145, 150, 152, 153 (67 SC 1098, 91 LE 1399); *Abrams v. State*, 223 Ga. 216 (154 SE2d 443).

The trial court did not err in overruling the defendant's motion to suppress.

3. There was evidence that a bent vacuum cleaner handle, which had traces of blood on it, was found in the room where the defendant and his deceased wife were shortly before her death. There was medical testimony that this instrument could have caused the deceased's fatal wound. The defendant denied hitting her with this instrument. He testified that his wife had threatened to kill him previously and on the afternoon of her death they got into a discussion and she threatened to kill him, and as she walked away from him toward a chest he threw a glass jar to excite her but did not intend to hit her; the jar did hit and cut the deceased's head.

The evidence authorized the court to charge on voluntary manslaughter. *Crawford v. State*, 12 Ga. 142 (6); *Wall v. State*, 126 Ga. 549, 551 (55 SE 484); *French v. State*, 43 Ga. App. 97, 98 (157 SE 902); *Turner v. State*, 111 Ga. App. 860 (143 SE2d 485); *Hamilton v. State*, 114 Ga. App. 50 (149 SE2d 922).

4. The defendant contends that he was entitled to a mistrial because of the solicitor's cross examination of the defendant's witness as to the witness's knowledge of a 1963 conviction of the defendant for a law violation. The witness had testified that the reputation of the defendant was good and he would believe him under oath. The court overruled the defendant's motion for mistrial and instructed the jury to disregard the

questioning. Irrespective of the propriety or admissibility of the evidence which the solicitor sought to present, the court did not permit him to present it and instructed the jury accordingly. The court did not err in overruling the motion for mistrial. *Spurlin v. State*, 222 Ga. 179, 181 (149 SE2d 315).

Judgment affirmed. *Bell, P. J., and Quillian, J., concur.*