## 43888. MADDOX v. THE STATE.

ARGUED SEPTEMBER 10, 1968—DECIDED SEPTEMBER 25, 1968—
REHEARING DENIED NOVEMBER 20, 1968—

*Charles M. Voyles, Frank R. Lea,* for appellant.

*Lewis R. Slaton, Solicitor General, J. Walter LeCraw, Tony H. Hight,* for appellee.

JORDAN, Presiding Judge. 1. The defendant's brief on the merits fails to specify in Part Two which enumerations are insisted upon, and nothing in this brief by way of citation of authority or argument appears to be directed to the first enumeration, insofar as this enumeration preserves as an issue the sufficiency of the evidence to support the conviction, or to any issues within the scope of the ninth, eleventh, twelfth and fourteenth enumerations, and these issues are deemed to be abandoned. Rule 17 (c) (2), this court.

2. The second, third, fourth, fifth, sixth, tenth and thirteenth enumerations are directed to rulings of the trial judge with respect to the comment of the prosecutor as to what he expected to prove by the "Newnan Affair" and the admissibility of evidence of this incident and the extent to which it could be considered by the jury. The "Newnan Affair" occurred several days before the fatal shooting on October 26, 1967. As gleaned from the entire transcript it appears that the defendant's daughter was married to the victim's brother, a soldier stationed in Vietnam, and that another brother of the victim, with whom the daughter was living, slapped the daughter in the course of

an argument about her conduct as a married woman during the absence of her husband, and that the defendant, hearing of this incident, went to this brother's house on Sunday, October 22, 1967, and engaged in an altercation and a course of conduct towards this brother because of the slapping incident which resulted in charges against him, the exact nature of which are undisclosed, which had not been disposed of when the shooting took place. This evidence does illustrate a state of bad feelings between the defendant and the victim's brother, which also may have arisen between the defendant, acting as the protector of his daughter, and the victim, knowing of the "Newnan Affair," acting as the protector of his brother. In this respect it is clear that the defendant and his victim did meet on the day of the shooting by agreement to settle in one way or another real or imagined differences. While this view of the evidence as a whole would tend to support the theory that the evidence of the affair, when considered with all of the circumstances leading to the agreed meeting, is admissible to illustrate the motive or intent of the defendant, as well as the victim, in their conduct towards each other, we base our determination that the enumerations are without merit on other compelling reasons. We think the defendant waived any claim of prejudicial error with respect to what the prosecutor stated he expected to show by the "Newnan Affair" and the evidence of the affair adduced by the prosecution when he brought out evidence of the affair by cross examination of the victim's brother, allowed his own statement to an investigating officer to be admitted without any objection or attempt to exclude his version of the affair, adduced through the defendant's daughter on direct examination testimony to the effect that she and the victim discussed the "Newnan Affair" in a telephone conversation, and that immediately thereafter her father engaged in a telephone conversation with the victim, and then finally related his version of the affair in making an unsworn statement to the jury. We do not think the defendant should be heard to complain of matters which, although first injected into the trial by the prosecution over objection, are also brought out in defense. See *Salisbury v. State*, 222 Ga. 549 (2) (150 SE2d 819); *Smithey v. State*, 219

Ga. 247 (1) (132 SE2d 666); *Whippler v. State,* 218 Ga. 198, 204 (126 SE2d 744).

3. In the seventh enumeration the defendant asserts error in admitting over objection testimony of an investigator to whom the defendant made statements at the scene of the shooting. The officer testified, "Of course, I advised him of his constitutional rights and then I asked him what had taken place and he explained it." The objection was "Your Honor, he would first have to go through what those constitutional rights were." Although the officer did not explain in detail what he advised the defendant, the court, in ruling on the objection, as renewed at the conclusion of the testimony, stated, "Well, you can ask him that if you want to. You had the right to cross examine him on that if you wished. He said he told him of his constitutional rights. You have the right to cross examine him. If you want to let him come back I will let you let him come back." The testimony is merely cumulative of other testimony, and while it does include a statement that the defendant shot the deceased, it reveals nothing more than that which the defendant freely and voluntarily admitted in open court. We think the defendant under these circumstances has no cause for complaint.

4. The defendant complains in the eighth enumeration that he was not permitted to rebut the testimony of another investigating officer, who testified at length concerning a statement obtained from the defendant after having advised him of his constitutional rights. In a hearing out of the presence of the jury, counsel for the defendant was afforded full opportunity and did question the witness at length concerning the advice given the defendant and how the statement was obtained. The testimony of this witness discloses a full compliance with constitutional safeguards. In response to the court's question, "Are you through with the evidence relating to the statement?" the defendant's counsel replied, "Yes, sir." The court then stated, "Go ahead, I will admit it." Apparently as an afterthought counsel then asked, "Your Honor, don't we have a right to put the defendant on the stand with reference to this particular feature?" and the prosecutor stated, "I think they do if they

have any evidence to dispute the evidence of the officer, Your Honor." The court then stated, "I have ruled on it. Go ahead, Let the jury come in." After further testimony of the officer in the presence of the jury a statement of waiver of counsel and the extrajudicial statement of the defendant, relating his version of the incident, were admitted without objection, and in each instance counsel affirmatively stated, "No objection." The argument in the brief consists solely of the assertion that "the defendant was denied the right to produce evidence as to the admissibility of defendant's statement taken by Sgt. Grant." The court never specifically refused to allow the defendant to testify or to produce any evidence of the admissibility of the statement. There is no showing that the defendant did desire to testify, and that the court did deny him this right, or that he did have other evidence which the court would not hear. This enumeration is without merit.

5. The fifteenth through twentieth enumerations of error are directed to asserted errors with respect to the action of the court in presenting issues to the jury in respect to mutual combat, justifiable homicide, and voluntary manslaughter, including the instructions as given and the failure to instruct. These enumerations are without merit.

6. The remaining enumeration is based on the assertion that "the trial court erred in permitting the solicitor to strike for cause all jurors who admitted to being opposed to capital punishment." The argument in the brief consists solely of the statement that "the makeup of the jury was conditioned to finding a guilty verdict as approximately 8 or 9 jurors were excused on conscientious grounds and the defendant did not have the benefit of a jury panel from which to strike which truly represented the cross-section of his peers." Neither the enumeration nor the brief refers to any part of the record or transcript to show what took place with respect to jury selection, and this court, having examined the record and transcript, finds nothing whatsoever either to rebut or support the enumeration, and under these circumstances it is without merit. Moreover, although the Supreme Court of the United States held in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) that a death

sentence cannot constitutionally be executed if imposed by a jury from which persons opposed to capital punishment or having conscientious scruples against imposing a death penalty have been removed, the court on the same day held that Witherspoon did not govern another case where the jury recommended a sentence of life imprisonment. Bumper v. North Carolina, 391 U. S. 543 (88 SC 1788, 20 LE2d 797). The latter case would appear to preclude application of Witherspoon to any case coming before this court, which has no jurisdiction to consider an appeal from the conviction of a capital felony. See *Thomas v. State*, 118 Ga. App. 359 (163 SE2d 850).

*Judgment affirmed. Pannell and Deen, JJ., concur.*