Kermit F. HOLTON, Plaintiff-Appellant,

v.

Lanson NEWSOME, Warden,
Defendant-Appellee.

No. 84–8393
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 21, 1985.

**1514**

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

This is an appeal from a denial of the writ of habeas corpus. Mr. Holton is a state prisoner currently serving two life terms at the Georgia State Prison in Reidsville. At his original trial, he was convicted of two counts of first-degree murder and sentenced to death. His direct appeal to the Georgia Supreme Court resulted in a reduction of his death sentences, but in all respects the court affirmed his conviction. *Holton v. State*, 243 Ga. 312, 253 S.E.2d 736, *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). He then filed this federal habeas petition. Mr. Holton asserted three grounds for relief in support of his petition: (1) that his Fifth and Fourteenth Amendment rights were violated because his conviction was unlawfully obtained by the testimony of his common-law wife; (2) that his rights under the Fifth, Sixth and Fourteenth Amendments were violated by the failure of the State to disclose favorable evidence to the defense; and (3) that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. The same grounds were raised on direct appeal to the Supreme Court of Georgia. Therefore, Mr. Holton has exhausted his available state remedies. *See Walker v. Zant*, 693 F.2d 1087 (11th Cir.1982). The district court, relying upon the magistrate's recommendation, denied habeas corpus relief. We affirm.

*Was Melinda Harris Petitioner's Common-Law Wife?*

Mr. Holton contends that his conviction was obtained through the testimony of his common-law wife, Melinda Harris. Pursuant to a pre-trial motion in limine filed by petitioner, a hearing was held in the trial court to determine whether Melinda Harris was in fact his common-law wife. After hearing the testimony of both the petitioner and Ms. Harris as well as several other witnesses, the trial court found that Melinda Harris was not his common-law wife. The trial court, therefore, denied his motion. Petitioner claims this ruling by the trial court rendered his trial fundamentally unfair under the Fifth and Fourteenth Amendments.

 There is no dispute as to the relevant law to be applied as to this issue. In Georgia, a spouse, even a common-law spouse, may not be compelled to give evidence in a criminal proceeding. *See* O.C.G.A. § 24–9–23. Additionally, whether a person is a spouse and thus entitled to claim the marital privilege is a fact question to be determined by the trial court. *See Holton v. State*, 253 S.E.2d at 738. In a case where the extrinsic evidence contradicts the testimony of the two principal witnesses, the trial court is authorized in Georgia to find that no common-law marriage exists. *Overcash v. State*, 239 Ga. 499, 238 S.E.2d 50 (1977).

 Both the magistrate and the district court agreed that whether the parties in question were married is a factual determination properly determined in the state courts. Therefore, as federal courts are required to do, they deferred to the state court's determination of this matter. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). We agree. Factual issues are defined as those relating to "basic primary or historical facts: facts 'in the sense of a recital of external events in the credibility of their narrators ....'" *Panzavecchia v. Wainwright*, 658 F.2d 337, 339 (5th Cir. 1981) (citations omitted). Therefore, we affirm the district court on this issue. The testimony of Melinda Harris was not a violation of the marital privilege and therefore it did not render his trial fundamentally unfair.

*Was Petitioner Entitled to Ms. Harris' Pre-trial Statement?*

The trial court conducted a pre-trial hearing and an *in camera* inspection of the State's file in order that certain material be

provided to Mr. Holton. The trial judge ordered that certain material be provided to defendant. He declined, however, to order production of a pre-trial statement given to the police by Ms. Harris. In her statement she informed the police that Mr. Holton told her both that he had committed the murder and how he had done it. Petitioner contends that the trial court's denial of his motion to compel the disclosure of the statement was erroneous because the statement was favorable to him and material to the issue of guilt or innocence. The issue before this court is whether the prosecution failed to disclose evidence so material to the guilt or innocence of the petitioner that he was denied a fair trial. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner's assertion, more specifically, is that the State should have been required to disclose the statement because it was both material and exculpatory and that had the statement been provided to him, he would have been able to challenge Ms. Harris' credibility. It is not disputed that Ms. Harris was the State's primary witness.[1] Both the magistrate and the district court after reviewing the statement concluded that petitioner had not established that the statement was material or exculpatory. We agree.

▮▮▮ It is true that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Blasco,* 702 F.2d 1315, 1327–28 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). Ms. Harris' statement, although possibly containing some misrepresentations, did not contain matters that were material and exculpatory to Holton's defense. The misrepresentations, if any, do not demonstrate that the petitioner was not guilty or that a lesser punishment should have been given or that the judgment of the jury was affected by them.[2] Additionally, her testimony was corroborated by several pieces of physical evidence as well as by the testimony of several state investigators. We have examined the statement in the record and we agree with the conclusions of the district court.

*Was the Trial Court's Denial of His Second Motion to Suppress Proper?*

Defendant contends that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. Prior to petitioner's trial, thirteen pre-trial motions, including a motion to suppress, were heard by the trial court. The first motion to suppress dealt specifically with items obtained during a search of the home of Mr. Holton's sister. That motion was denied after a hearing. Petitioner's second motion to suppress was filed four days before trial. This motion related to items seized from his motel room. At-

---

1. The magistrate accurately summarized the petitioner's contentions as follows:

 Generally, petitioner contends that had he had Ms. Harris' pre-trial statements, he would have been able to show that Ms. Harris, in a pre-trial statement to police, indicated that petitioner had taken a drill from Georgia to her in Florida, while at trial she testified that he had taken her sander. Additionally, petitioner contends that Ms. Harris stated pre-trial that petitioner had pawned certain stolen merchandise in his name in Las Vegas, while testimony at trial indicated that at least one of these items had been pawned by Ms. Harris.

 Additionally, petitioner contends that Ms. Harris made a pre-trial statement to the effect

that she had informed a Las Vegas police investigator of the Georgia murders. Ms. Harris stated that she did not remember the investigator's name, and apparently no follow-up was made by the Las Vegas investigator. Petitioner contends that since the police officer apparently made no further inquiry into the murders, it somehow indicates that Ms. Harris was not truthful in either her pre-trial statements or her testimony at trial.

2. There is also no allegation and indeed no evidence that the prosecution knew or suspected that there were any misrepresentations in the statement.

**1516**

tached to this second motion was an affidavit alleging that the warrant was defective. On the first day of trial, the trial court summarily denied the motion to suppress without holding a hearing on the merits stating that the motion was not timely filed. The basis of this denial was that the petitioner was previously on notice of the motel room search[3] and should have filed the motion earlier. The Georgia Supreme Court, in addressing this issue, concluded that the trial judge had not abused its discretion in finding that the second motion to suppress was untimely. *Holton v. State,* 243 Ga. at 317, 253 S.E.2d 736. The magistrate, in his opinion, concluded that "this determination by the Georgia Supreme Court amounts to an authoritative construction of a state's law by the State's highest court." The magistrate also found that there were no extraordinary circumstances present which would compel the court to overrule the state court's construction of state law. Magistrate's Report and Recommendation at 10.[4]

 In Georgia, a motion to suppress must be timely made or else it is waived. *Thomas v. State,* 118 Ga.App. 359, 360, 163 S.E.2d 850, 851 (1968), *cert. denied,* 394 U.S. 943, 89 S.Ct. 1273, 22 L.Ed.2d 497 (1969); *see also* O.C.G.A. § 17–5–30 (1982). Additionally, state courts are the ultimate expositors of state law and federal courts are bound by their constructions of state law except in extreme circumstances. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We agree with the district court that Holton has offered no compelling reason to disturb the Georgia court's conclusion that the suppression motion was untimely filed. Additionally, our independent review of the evidence supports the district court's conclusion that the admission of this evidence was not unduly prejudicial. Melinda Harris testified that Holton told her that he

had committed the crime and how he had committed it. Her testimony was consistent with the account given by several state investigators. The items in Harris' control in the home of Holton's sister were identified as having belonged to the victims. The disputed evidence obtained from the search in question, a checkbook which contained the phone number of the victims, a bullet, and some towels containing blood samples, merely corroborated the otherwise overwhelming evidence of Holton's guilt. Therefore, Holton suffered no prejudice and even if there were error it would be harmless.

Therefore, having reviewed the record in this case as well as the opinions of the Georgia Supreme Court, the Magistrate's Report and Recommendations, and the district court's order, we conclude that Holton is entitled to no relief and the judgment is

AFFIRMED.

---

3. The record indicates that the evidence sought to be suppressed in the second motion included a checkbook which contained the names and addresses of the victims, a bullet, and some towels containing blood samples.

4. The magistrate also went on to find that Mr. Holton would have been convicted without the

evidence which is merely cumulative to other overwhelming evidence presented by the State and that therefore petitioner suffered no prejudice by the admission of the evidence. The district court affirmed the finding of the magistrate quoting extensively from his report.