James D. SANDEFUR, O.D. and W.E. Marionneaux, Jr., O.D., Plaintiffs-Appellants,

v.

William A. CHERRY, M.D., Secretary of the Louisiana Department of Health and Human Resources, et al., Defendants-Appellees.

No. 82–3564.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1983.

**684**

Henry B. Bruser, III, Robert G. Nida, Alexandria, La., for plaintiffs-appellants.

Charles E. Daspit, Dept. of Health & Human Resources, Baton Rouge, La., for defendants-appellees.

Before RUBIN and JOLLY, Circuit Judges, and PUTNAM *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Louisiana's Medicaid plan authorizes reimbursement of ophthalmologists for any medically necessary eye care they provide to needy persons. The plan allows reimbursement of optometrists only for prescribing eyeglasses to persons who have had cataract surgery and for eye care they furnish to persons under 21 years of age. The plaintiffs, licensed optometrists, contend that the reimbursement policies violate state and federal law because, unlike ophthalmologists, they are not reimbursed for eye examinations of needy persons. The district court ruled for the defendants after trial, dismissing the complaint. *Sandefur v. Cherry*, 547 F.Supp. 418 (M.D. La.1982). We affirm the dismissal of the federal claims, but certify the pendent state claim to the Louisiana Supreme Court.

I.

■ At the time this suit was filed, general federal question jurisdiction required that the amount in controversy exceed $10,-000[1] and jurisdiction under 28 U.S.C. § 1343 was unavailable for Social Security claims.[2] The district judge held that, because the plaintiffs invoked a federal statute and the supremacy clause, federal jurisdiction was available under 28 U.S.C. § 1331 (1976) and pendent jurisdiction existed over the equal protection, due process, and state law claims.[3]

While this case was pending, Congress amended § 1331 to eliminate the $10,000 amount-in-controversy requirement.[4] Absent manifest injustice, we apply the law in effect at the time we render our decision.[5] *Bradley v. School Board* establishes a three-part test to determine whether we should apply current law, focusing on the nature of the parties, the nature of their rights, and the nature of the impact of the change in the law on these rights. 416 U.S. at 717, 94 S.Ct. at 2019, 40 L.Ed.2d at 491–92. Under current law, the district court would have jurisdiction over the claim based on the supremacy clause and over the other federal claims.[6] Therefore, it would be wasteful to both the parties and the courts to dismiss

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. *See* 28 U.S.C. § 1331 (1976).

2. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

3. 547 F.Supp. at 422. The district judge relied on *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

4. Act of Dec. 1, 1980, Pub.L. No. 96–486, § 2(a), 94 Stat. 2369 (codified at 28 U.S.C. § 1331 (Supp. V 1981)).

5. *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

6. *See, e.g., Charleston Memorial Hosp. v. Conrad*, 693 F.2d 324, 329–31 (4th Cir.1982) (Medicaid claim based on supremacy clause); *see generally Franchise Tax Board v. Construction Laborers Vacation Trust*, —— U.S. ——, n. 9, 103 S.Ct. 2841, 2847 n. 9, 77 L.Ed.2d 420, 431 n. 9 (1983) (federal jurisdiction determined by "well-pleaded complaint" rule).

this appeal for lack of federal jurisdiction, for it could be at once refiled. Whether or not the original complaint conferred jurisdiction, we now have jurisdiction over the federal claims.

The state law issue is unsettled and difficult. We may vindicate the policies of comity and finality articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), by certifying that question to the Louisiana Supreme Court.[7] We may do so, however, only if the state-law claim is determinative of the case.[8] Therefore, we must first decide the federal claims.

We recognize that this approach is contrary to the general principle of avoiding decision of federal questions when state questions might moot the federal claim.[9] That principle rests upon judicial self-restraint and is not jurisdictional. Such abnegation here would defeat an even stronger policy: allowing state courts to decide state law when possible, if this does not defeat properly invoked federal jurisdiction. Patently if we decline to decide the federal questions the Louisiana Supreme Court might decline to decide the state question. Therefore, we proceed to the merits of the federal claims.

## II.

▮ Title XIX of the Social Security Act[10] establishes the Medicaid program.

Medicaid depends upon cooperative federalism, for the federal government assists participating states in funding health care for needy persons. Participating states submit a medical assistance plan for approval by the Secretary of Health and Human Services.[11]

The state is not obliged to provide care to all needy persons. If it participates in the Medicaid program, it must provide assistance to the "categorically" needy.[12] It may, at its option, also cover the "medically needy."[13] Each state plan must provide financial assistance for five general areas of medical treatment: inpatient hospital services, outpatient hospital services, other laboratory and x-ray services, skilled nursing facilities, and physicians' services.[14] The state has broad discretion with respect to the coverage it provides in each of these categories, but its plan must provide medical assistance "sufficient in amount, duration, and scope to reasonably achieve its purpose,"[15] based on "reasonable standards" consistent with the purposes of the Act.[16] Thus a state may decline to pay for some medically prescribed devices, such as eyeglasses and orthopedic shoes,[17] and may refuse to reimburse patients for visits to certain health care providers, such as chiropractors and podiatrists.[18] Care provided by optometrists, who are not doctors of medicine, but are licensed in Louisiana to

**7.** La.Rev.Stat.Ann. § 13:72.1 (West Supp. 1983); La.Sup.Ct.R. XII.

**8.** *See* La.Rev.Stat.Ann. § 13:72.1; *see also, e.g., Olsen v. Shell Oil Co.*, 574 F.2d 194 (5th Cir. 1978); *Aetna Casualty & Surety Co. v. Hertz Corp.*, 573 F.2d 306, 306–07 (5th Cir.1978) (per curiam).

**9.** *See Hagans*, 415 U.S. at 546–47, 94 S.Ct. at 1383–84, 39 L.Ed.2d at 593 (and cases cited therein).

**10.** 42 U.S.C.A. §§ 1396–1396p (West 1974 & Supp.1983).

**11.** 42 U.S.C. § 1396 (1976); *see generally* 42 C.F.R. §§ 431.1–.802 (1981).

**12.** 42 U.S.C. § 1396a(a)(10)(A) (Supp. V 1981); *see* 42 U.S.C.A. § 1396d(a) (West 1974 & Supp. 1983).

**13.** 42 U.S.C. § 1396a(a)(10)(C) (Supp. V 1981); *see* 42 U.S.C.A. § 1396d(a) (West 1974 & Supp. 1983). Louisiana has chosen to cover the medically needy.

**14.** 42 U.S.C.A. § 1396d(a)(1)–(5) (West 1974 & Supp.1983); *see id.* § 1396a(a)(10)(B) (Supp. 1983).

**15.** 42 C.F.R. § 440.230(b) (1981).

**16.** 42 U.S.C. § 1396a(a)(17) (1976).

**17.** 42 U.S.C. § 1396d(a)(12), (13) (1976); *see* 42 U.S.C.A. § 1396a(a)(10)(B) (West Supp.1983).

**18.** 42 U.S.C. § 1396d(a)(6) (1976). For example, Louisiana covers chiropractors' care "with restrictions" and does not provide for podiatrists' care.

employ or apply any means other than surgery "for the measurement of the powers and testing the range of vision of the human eye," [19] is one of the optional services.

For some time after it began participating in the Medicaid program, Louisiana had an "informal" plan. Since 1976, the federal government has provided printed pages for possible inclusion in state plans. Each page contains one or more statements followed by blank spaces to answer in accordance with a number of options, such as "yes," "no," and "not applicable." The state agency responsible for developing the Medicaid plan "drafts" the plan by assembling a set of pages and checking the box or boxes on each page indicating the state's coverage. Thus Louisiana's current plan consists of hundreds of "checked-off" pages with explanatory material appended.

Louisiana's plan provides coverage "with limitations" for care by optometrists. Optometrists are paid for "cataract glasses or contact lenses following cataract surgery." [20] However, Louisiana's plan provides greater coverage for care rendered by ophthalmologists. Because ophthalmologists are physicians, their services in making eye examinations and prescribing eyeglasses are covered provided that the patient has not used all of the twelve visits the state plan permits each year and the care is "medically necessary."

The plaintiffs contend that this distinction is inconsistent with the Medicaid statute and regulations and violates the due process and equal protection clauses of the United States Constitution. We consider these arguments in turn.

### III.

The plaintiffs' supremacy clause argument turns on whether § 3.1(f) of Louisiana's plan is inconsistent with federal requirements. The relevant printed page, incorporated as part of Louisiana's plan, states:

*Optometric Services*

Optometric services (other than those provided under §§ 435.531 and 436.531) are not now but were previously provided under the plan. Services of the type an optometrist is legally authorized to perform are specifically included in the term "physicians' services" under this plan and are reimbursed whether furnished by a physician or an optometrist.

This printed statement is followed by boxes for "yes," "no," and "not applicable." At the time the plaintiffs filed suit, there was an "x" in the box next to the word "yes." After the suit was filed, Louisiana officials altered the description of the plan by placing the "x" in the box next to the words: "Not applicable. The conditions in the first sentence do not apply." The state contends that Louisiana never provided these services and that the first form was, therefore, incorrectly completed with a "yes" answer. The "amendment," it contends, did not reflect a real change in policy but merely a correction of the earlier mistake.

The plaintiffs, however, contend that the original document was a correct statement and *ipso facto* constitutes Louisiana's plan; consequently, the change in the description of the plan violates § 1396d(e) of the Act. That section, which is set forth in full in the margin, requires the state to reimburse optometrists for "services of the type which an optometrist is legally authorized to perform" if the state plan does not now reimburse optometrists for those services but did so at one time.[21]

---

**19.** La.Rev.Stat.Ann. § 37:1041(3) (West Supp. 1983).

**20.** Optometrists are also reimbursed for care provided to patients in the Early and Periodic Screening, Diagnosis and Treatment Program. This program essentially seeks to prevent disease in children. The optometrists claimed that they were not reimbursed under this plan for services for which ophthalmologists received payment. The district judge did not consider this claim because he concluded that the parties agreed that it was not in issue. *See* 547 F.Supp. at 424 n. 7.

**21.** That section provides:

In the case of any State the State plan of which (as approved under this subchapter)—

(1) does not provide for the payment of services (other than services covered under section 1396a(a)(12) of this title) provided by an optometrist; but

Congress added this section in 1972 to prevent states from dropping optometric care from their state plans but continuing "to provide for eye care which an optometrist is licensed to provide under physicians' services. . . ."[22] Congress intended to require states that had reimbursed optometrists for their services to continue to reimburse them if the state now reimburses physicians for eye care that optometrists are legally authorized to perform. In short, states subject to this provision must pay for such care "whether provided by a physician or an optometrist; optometrists could not be excluded as potential providers in these cases."[23]

The plaintiffs argue that the state's "yes" answer on the printed form and its change to an answer indicating "not applicable" "proves" both that Louisiana "at one time did provide for payment of the services of the type which optometrists are legally authorized to perform," and that the state later reduced its coverage to "provision for limited optometric services." This argument confuses words with reality. A change by Louisiana in the words on a form does not establish a violation of the statute, for the statute forbids only a change in the state's action, not a change making language conform to actual policy. Thus, Louisiana would have violated the statute only if it at one time in fact paid optometrists for services for which it now refuses to pay them but for which it does pay ophthalmologists.

There is simply no proof in the record that the state has ever paid optometrists for rendering services that are not now state-compensated. The plaintiffs relied solely on the printed page; they adduced no evidence of actual payments to optometrists and no evidence of a state plan authorizing payment to optometrists for services other than post-cataract-operation contact lenses or eyeglasses. Indeed, the only evidence concerning earlier practice was plaintiff Sandefur's testimony that he had submitted claims such as ophthalmologists might have submitted and that they had been denied.[24]

The district judge found that the "yes" box had been checked in error and that the "not applicable" box should have been checked at all times. This finding of fact is binding on us unless clearly erroneous. Fed.R.Civ.P. 52(a). The record does not undermine the district court's finding. The plaintiffs bore the burden of proving that the state in fact reimbursed optometrists in the past and they failed to meet it. Therefore, the plaintiffs' contention that the state's plan is inconsistent with the statute,

(2) at a prior period did provide for the payment of services referred to in paragraph (1);

the term "physicians' services" (as used in subsection (a)(5) of this section) shall include services of the type which an optometrist is legally authorized to perform where the State plan specifically provides that the term "physicians' services", as employed in such plan, includes services of the type which an optometrist is legally authorized to perform, and shall be reimbursed whether furnished by a physician or an optometrist. 42 U.S.C. § 1396d(e) (1976).

22. S.Rep. No. 1230, 92d Cong., 2d Sess. (1972); see S.Conf.Rep. No. 1605, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5370, 5380 ("a State which once covered optometrists' services under its medicaid program and now specifically covers eye care provided by physicians which an optometrist is authorized to provide must cover such services whether rendered by a physician or an optometrist").

23. S.Rep. No. 1230, supra note 22; see 42 C.F.R. § 441.30 (1981) (implementing regulation).

24. Q. Have you had—have you submitted claims for services within the scope of your practice of optometry furnished to eligibles in this program and have those claims for those services been denied by the state?
A. Yes, I have.
Q. For what types of services?
A. Specifically, I believe I have billed the state for gonioscopy. I have billed them for normal visual field exams, I have billed them for provocative tests of glaucoma, I believe.
Q. Have you billed them under billing codes utilized under the state plan by ophthalmologists?
A. Yes.
Q. And have you been paid for those services furnished to these children in that program?
A. No.

hence violative of the supremacy clause, is without merit.

## IV.

The optometrists next contend that Louisiana's plan deprives them of the equal protection of the laws guaranteed by the fourteenth amendment to the Constitution because it reimburses ophthalmologists for "routine eye examinations" but does not pay optometrists for the same care. Examining Louisiana law, the district judge held that optometrists and ophthalmologists are not similarly situated and that the state may, therefore, make different provision for the two professions without denying either equal protection.

It is unnecessary in resolving this question to consider the scope of optometric practice in Louisiana. It is well-settled that, to justify a distinction of the sort challenged here, a state need demonstrate only that its classification is rationally related to a legitimate governmental interest.[25] Optometrists are not physicians and must refer cases of suspected eye pathology to medical doctors.[26] The plaintiffs testified that some 10 to 15 percent of optometrists' patients must be referred to physicians; most referrals are to ophthalmologists who, unlike optometrists, are licensed to treat eye pathology.

■ The state is not required by the equal protection clause to make perfect classifications.[27] Louisiana's decision that patients should visit an ophthalmologist for examination rather than an optometrist is rationally related to a legitimate state interest, for the ophthalmologist will likely not be required to refer the patients to another doctor.[28] Furthermore, a reimbursement policy that encourages one-stop examination, diagnosis, and treatment might be considered to be in the patients' interest, for a visit to an optometrist followed by a referral to a medical doctor might count as two of the twelve permitted visits. Therefore, the equal protection claim is without merit.

## V.

■ The optometrists also contend that the state rule denies them due process of law in violation of the fourteenth amendment. They claim that the state rule denies them "employment opportunities"—essentially, as we comprehend the assertion, the "right" to pursue their vocation.

Merely because government may not unreasonably interfere with a person's right to practice his profession does not mean that it must pay him to practice it. A contrary holding would "translate the limitation on governmental power implicit in the Due Process Clause into an affirmative funding obligation .... Nothing in the Due Process Clause supports such an extraordinary result."[29] The clause simply does not "confer an entitlement to such funds as may be necessary to realize all the advantages of [liberty]."[30]

25. *See Harris v. McRae,* 448 U.S. 297, 324, 100 S.Ct. 2671, 2692, 65 L.Ed.2d 784, 809 (1980).

26. Optometrists are trained to recognize symptoms of many diseases that may be detected by eye examination. Nevertheless, they are not permitted to make a diagnosis, but must refer the patient to a medical doctor. M. Hirsch & R. Wick, The Optometric Profession 6, 17 (1968). "The important consideration for the optometrist, however, is that he see and identify the [symptom]. It is his responsibility to refer the patient to the appropriate medical practitioner for diagnosis and treatment of the disorder." *Id.* at 17. Optometrists in Louisiana are subject to this limitation. *See Fairchild v. Brian,* 354 So.2d 675 (La.Ct.App.1977) (optometrist liable for malpractice for failure to refer patient with suspected eye pathology to ophthalmologist); *see generally* Annot., 51 A.L. R.3d 1273 (1973 & Supp.1982).

27. *See, e.g., Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955).

28. This concern is particularly important given the current financial strain on the states caused by soaring medical costs for the 20 million Americans receiving Medicaid. *See* Wall Street Journal, June 29, 1983, at A1, col. 6.

29. *Harris,* 448 U.S. at 318, 100 S.Ct. at 2689, 65 L.Ed.2d at 805 (footnote omitted).

30. *Id.* at 318, 100 S.Ct. at 2688, 65 L.Ed.2d at 805.

## VI.

■ Finally, the optometrists claim that Louisiana's reimbursement scheme violates the state's "freedom of choice" statute prohibiting the state from discouraging patients from securing eye care from optometrists.[31] This statute has not been interpreted by any Louisiana court, nor has any state court definitively defined the scope of optometric practice in Louisiana since the amendment of the statute governing optometrists.[32]

Having jurisdiction of the federal claims, the district court properly accepted jurisdiction over this pendent state claim. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court discussed whether a federal court might acquire jurisdiction over such claims, which are not ordinarily within the constitutional authority of federal courts. *Gibbs* held that a federal court has the power to hear such state-law claims on the basis of their intimate relationship to federal claims, but that the federal court's decision to do so is interlocutory and may be reconsidered.

> [T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims ... which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take account in this circumstance of the already completed course of the litigation, dismissal of the state claim might even then be merited. For example, it may appear that the plaintiff was well aware of the nature of his proofs and the relative importance of his claims; recognition of a federal court's wide lati-

tude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

*Id.* at 727, 86 S.Ct. at 1139–40, 16 L.Ed.2d at 229.

In *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Court refined the criterion. It stated: "[I]t is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims." *Id.* at 545–46, 94 S.Ct. at 1383, 39 L.Ed.2d at 592–93. The Court then discussed the desirability of resolving "possibly dispositive state law claims pendent to federal constitutional claims," noting that the doctrine, although "not ironclad," is "recurringly applied, and, at the very least, ... presumes the advisability of deciding first the pendent, nonconstitutional issue." *Id.* at 546–47, 94 S.Ct. at 1384, 39 L.Ed.2d at 593 (footnote omitted). Finally, the Court noted that *Gibbs'* rationale "centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment." *Id.* at 548, 94 S.Ct. at 1385, 39 L.Ed.2d at 594.

Decision of the state-law issue here raised requires an interpretation of a state statute never analyzed by a state court and not pellucid in text. Yet the defendants have

---

**31.** Every person shall have complete freedom of choice to use the services of optometrists licensed under this Chapter where such services are permitted by law, and no state, parish or municipal board or agency, or any officer or employee thereof, shall either directly or indirectly limit or restrict the freedom of any person to choose the services of either an optometrist, a physician or a surgeon.

La.Rev.Stat.Ann. § 37:1066 (West 1974).

**32.** *Id.* § 37:1041(3), (4) (Supp.1983). The statute was amended in 1975 to permit optometrists to use topical ocular diagnostic pharmaceutical agents, but it is not clear whether the amendment altered the scope of optometric practice. *Compare id.* § 37:1041(3) (West 1974) *with id.* (Supp.1983). *See generally* Annot., 88 A.L.R.2d 1290 (1963 & Supp.1979).

never objected to the district court's assertion of jurisdiction over the state claim and, as the Supreme Court made clear in *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 627, 94 S.Ct. 1323, 1336, 39 L.Ed.2d 630, 648 (1974): "[T]he dissent's view of pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage and that is capable of aborting prior federal court proceedings is a misreading of the law."

The district judge might properly have abstained from deciding the case until the state question was settled under the doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[33] A district court may not certify a question to a state court, but that recourse to the ultimate authority on state law is available to us. We decline to wipe out a lengthy trial, a complete evidentiary record, and findings of fact by remanding the case with instructions to abstain.[34] Concluding that the state claim is properly before us, we decline to undertake a determination better left to the state courts, and certify it to the Louisiana Supreme Court.

Accordingly, because this case involves a determinative question of Louisiana law and there are no controlling state law precedents, we propose to certify to the Supreme Court of Louisiana pursuant to La.Rev.Stat.Ann. § 13:72.1 (West Supp. 1983) and La.Sup.Ct.R. XII, the following question:

### TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

Does the state Medicaid plan, by permitting reimbursement to ophthalmologists for medically necessary treatment but limiting reimbursement to optometrists to eyeglasses or contact lenses for cataract surgery patients, violate the "freedom of choice" statute, La.Rev.Stat.Ann. § 37:1066 (West 1974)?

The Louisiana Supreme Court will not, of course, be bound by our formulation of the question in its consideration of the problem involved. *Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968). In accordance with our practice, we will allow the parties 30 days to agree to a joint statement of facts and proposed certificate of questions, and, if they wish, to file supplemental briefs. *See State Farm Mutual Automobile Insurance Co. v. Daughdrill,* 695 F.2d 141, 143 (5th Cir.1983).

### VII.

The judgment of the district court dismissing the federal claims is AFFIRMED. The judgment dismissing the state claim is VACATED and the question is CERTIFIED to the Supreme Court of Louisiana.

---

**33.** *See KVUE, Inc. v. Moore,* 709 F.2d 922, 931 & nn. 22–23 (5th Cir.1983).

**34.** *See Mayor of Philadelphia v. Educational Equality League,* 415 U.S. at 628, 94 S.Ct. at 1337, 39 L.Ed.2d at 649.