**PETROLEUM HELICOPTERS, INC.,**
**Plaintiff-Appellant,**

v.

**AVCO CORPORATION, et al.,**
**Defendants-Appellees.**

No. 86–4144.

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1987.

Lisa J. Miley, McGlinchey, Stafford, Mintz, Cellini & Lang, Kenneth H. Laborde, New Orleans, La., for plaintiff-appellant.

Howard Daigle, Jr., Phelps, Dunbar, Marks, Claverie & Sims, Stephen P. Hall, New Orleans, La., for The Garrett Corp.

Before BROWN, RUBIN, and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Louisiana company sued a California manufacturer for property damage sustained when its helicopter sank in the coastal waters off Louisiana shores. It alleged that the accident was caused at least in part by a defect in the helicopter float that had been made by the manufacturer and sold by it in New Jersey to a Texas company. The district court dismissed the action for lack of personal jurisdiction over the manufacturer under Louisiana's long-arm statute, 623 F.Supp. 902 (1985). We certify to the Louisiana Supreme Court the question of the long-arm statute's applicability.

I.

Petroleum Helicopters, Inc., a Delaware corporation which has its principal place of business in Louisiana, bought a helicopter from Aerospatiale Helicopter Corporation, a Texas manufacturer, to transport men and equipment from Louisiana to offshore installations. The helicopter, apparently while being used for this purpose, sank after an emergency landing on the Gulf of Mexico, beyond the territorial waters of Louisiana. Garrett Corporation, the defendant, had supplied the helicopter flotation devices from its New Jersey plant.

Petroleum Helicopters sued Aerospatiale and, in addition, Avco Corporation, a Connecticut corporation, which had designed and manufactured the helicopter engine; Societe Nationale Industrielle Aerospatiale, a corporation domiciled in France, which had also participated in the design and manufacture of the engines; Parker Hannifin Corporation, which had designed and manufactured the fuel manifold of the helicopter engine; and Garrett. Petroleum Helicopters asserted that Garrett had designed, manufactured, and assembled the flotation devices on the helicopter; that these had defects at the time they left Garrett's hands that caused or contributed to the sinking of the helicopter; and that Garrett was liable to it for breach of express and implied warranties made by Garrett. Service of process was made on Garrett under the Louisiana long-arm statute. Michael Duhon, who was a passenger in the helicopter, died in the accident. His representatives brought suit in state court, suit 84–3057 in the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana. In that suit Garrett was named as a principal defendant and as a cross-claim defendant by Petroleum Helicopters. That court has sustained a motion to dismiss Garrett.

Garrett, whose principal place of business is in California, manufactures aerospace and industrial products, including helicopter floats, which are made in New Jersey. Garrett has no property or offices

in Louisiana nor are any of its employees based there.

Garrett supplies 80% of the helicopter flotation systems used in the entire world. It sells floats to manufacturers of helicopters like Aerospatiale and it also sells replacement helicopter floats to users of helicopters. In 1980, Aerospatiale's sales to Petroleum Helicopters were 19% of its volume and in 1981 these amounted to 8%. In that year, Garrett sold floats costing about $7,000 to Petroleum Helicopters and sold other Louisiana customers $14,000 in floats. The floats sold directly to Petroleum Helicopters, however, were made for a different kind of helicopter than the one that sank.

Aside from the sale of helicopter floats, Garrett conducts a substantial amount of business in Louisiana. Between 1980 and 1983, its Louisiana sales averaged $1.75 million. A Garrett account executive visits Louisiana monthly to discuss the use of Garrett equipment with customers; other Garrett representatives visit Louisiana to train users of Garrett products; Garrett sends a mobile van to Louisiana semi-annually to service its products; and Garrett mails promotional materials directly to customers in Louisiana. It also advertises its products in several national trade publications that are distributed in Louisiana.

Garrett contends that neither the Louisiana long-arm statute nor due process permits a Louisiana court to assert personal jurisdiction over it. Petroleum Helicopters argues that the sole test for personal jurisdiction in a federal question case is due process and that due process allows jurisdiction over Garrett. Petroleum Helicopters also contends that, even if the long-arm statute governs personal jurisdiction, the court can assert jurisdiction over Garrett.

The long-arm statute question is unsettled; consequently, it is an appropriate issue for certification to the Louisiana Supreme Court.[1] We may certify, however, only if the state-law question controls the outcome of the case.[2] Consequently, we must first decide the federal issue.[3] Ordinarily, we do not decide a federal question when resolution of a state issue might moot the federal question. Restraint here, however, would defeat the even stronger policy of having state courts decide state law. If we do not decide the federal question, the Louisiana Supreme Court might not decide the long-arm statute issue for the certified question might not then be dispositive, and we might be seeking decision of a question that would prove to have been moot.[4]

## II.

If Garrett has minimum contacts with Louisiana of such a nature that subjecting it to the jurisdiction of Louisiana courts would not offend "traditional notions of fair play,"[5] it is not deprived of due process by the assertion of in-personam jurisdiction. The concept of minimum contacts assures that defendants will be treated fairly by protecting them "against the burdens of litigation in [an] inconvenient forum."[6] It also ensures that the state asserting jurisdiction has a sufficient interest in deciding the suit,[7] and is not selected as a mere adjudicator of a dispute that is of no concern to it.

■ In-personam jurisdiction may be asserted on two different bases. If a corporation engages in "continuous and system-

---

1. *Sandefur v. Cherry,* 718 F.2d 682, 685 (5th Cir.1983).

2. *Id.;* La.Rev.Stat.Ann. § 13:72.1 (West 1983).

3. *Sandefur,* 718 F.2d at 685.

4. *Id.*

5. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *World-Wide Volkswagen Corp. v. Wood-*

*son,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

6. *World-Wide Volkswagen,* 444 U.S. at 291–92, 100 S.Ct. at 564.

7. *Id.* at 292, 100 S.Ct. at 564; *Pedalahore v. Astropark, Inc.* 5th Cir., 745 F.2d 346, 349 (5th Cir.), *reh'g denied,* 751 F.2d 1258 (5th Cir.1984).

atic general business" activities in a state, then the state may exercise "general" jurisdiction over it.[8] When a state has general jurisdiction over a corporation, its courts have power to adjudicate suits in which the corporation is involved even if there is no relationship between the cause of action and the defendant's contacts with the forum.[9] On the other hand, if general jurisdiction is lacking, but the cause of action arises out of or is related to the defendant's contacts with the forum, the forum may exercise "specific" jurisdiction,[10] that is, jurisdiction limited to adjudication of the particular controversy.

Relying upon the 1984 Supreme Court decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall,*[11] Garrett contends that Louisiana cannot exercise either general or specific jurisdiction over it. In *Helicopteros* however, both parties agreed that specific jurisdiction was absent. Consequently, the court restricted its analysis to circumstances warranting the exercise of general jurisdiction.[12]

■ Garrett's activities in Louisiana are not sufficient to establish general jurisdiction, so Petroleum Helicopters relies on the thesis that the Louisiana long-arm statute confers specific jurisdiction over Garrett. In *World-Wide Volkswagen Corp. v. Woodson,*[13] the Supreme Court held that specific jurisdiction may be exercised over a corporation that engages in such a sufficient amount of business in a state that it can "reasonably anticipate being haled into court there" to defend actions concerning its products.[14] The stream-of-commerce principle is designed to encompass companies that purposefully serve markets broader than the states in which its initial or direct sales are made.[15] Consequently, we have held that jurisdiction may be asserted over a company that manufactures a component part in one state for incorporation into a finished product in a second state and sale to customers in a third state.[16] The evidence warrants the conclusion that Garrett tried to serve as broad a market as it could reach, including Louisiana.[17] Unlike the local distributors in *World-Wide Volkswagen,* who merely resold products made by and purchased from another, Garrett is a manufacturer who makes its product " 'available for purchase in as many forums as possible.' "[18] Garrett directly served the Louisiana market with its replacement floats; it indirectly served Louisiana customers by selling its floats for incorporation into helicopters that were sold for use in Louisiana.[19] Moreover, Garrett sent representatives to Louisiana for promotion, training, and servicing.[20] In sum, Garrett "deliver[ed] its [floats] into the stream of commerce with the expectation" that Louisianans would purchase them.[21] Garrett purposefully availed itself of the benefits of doing business in Louisiana; consequently, it is not unfair to re-

**8.** *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445–46, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952).

**9.** *Helicopteros,* 104 S.Ct. at 1872 n. 9.

**10.** *Helicopteros,* 104 S.Ct. at 1872 n. 8.

**11.** 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**12.** *Helicopteros,* 104 S.Ct. at 1872–73 & n. 10.

**13.** 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**14.** *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

**15.** *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1084 (5th Cir.1984).

**16.** *Id.* at 1085.

**17.** *Id.*

**18.** *Id.* at 1084 (quoting *Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1125–26 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984).

**19.** *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

**20.** *Pedalahore,* 745 F.2d at 349.

**21.** *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567.

quire Garrett to appear in Louisiana courts.[22]

■ Louisiana has a strong interest in adjudicating this dispute. The helicopter was used in Louisiana by a firm having its principal place of business in this state, and that firm suffered the economic injury. Louisiana has an " 'interest in providing effective means of redress for its residents.' " [23] The litigation is pending in the same court that dismissed Garrett, so it would be manifestly more convenient to adjudicate the entire dispute in Louisiana.[24]

■ Garrett contends that the stream of commerce analysis should not apply because the accident occurred outside of Louisiana. This argument mischaracterizes stream of commerce doctrine. Whether the accident occurred inside or outside of Louisiana does not affect the fairness to Garrett of appearing in Louisiana. Although the location of the accident affects Louisiana's interest in adjudicating the dispute,[25] the absence of a Louisiana location does not outweigh the factors favoring the interest. Since the accident did not occur within the territorial jurisdiction of any other state, no other state is the place of injury or supplies the *ex locus delicti*. If Garrett can be sued only in New Jersey, where it sold the helicopters, or at its domicile in California, it is likely that all of the claims involved in the present controversy cannot be decided in a single forum. Consequently, we hold that Garrett would not be deprived of due process by the assertion of specific jurisdiction over it in Louisiana.

### III.

■ Even if a corporation may constitutionally be subjected to the jurisdiction of a state court, its amenability to that jurisdiction is governed by the state's standards. The federal constitution sets the limits of state jurisdiction but a state may choose not to exercise all of the power that is permitted by the federal constitution. Even when a plaintiff invokes federal question jurisdiction and serves process under a state long-arm statute, a federal court can assert jurisdiction only if the state court could have done so.[26] Consequently, we must decide whether Louisiana's long-arm statute[27] permits us to assert jurisdiction over Garrett.

Prior to 1986, this court consistently held that Louisiana's long-arm statute was intended to empower Louisiana courts to exercise the full extent of the jurisdiction permitted by the federal due process clause.[28] We based this interpretation on the official comments of the redactors of the long-arm statute[29] and an unwavering line of decisions by the Louisiana Supreme Court. Thus, the Louisiana Supreme Court said, in *Fryar v. Westside Habilitation Center,* a 1985 opinion, "Louisiana's Long-Arm Statute ... is intended to encompass the maximum jurisdictional outreach allowable under the United States Constitution."[30] In *Clay v. Clay,* written in 1977,

---

**22.** *Id.* at 297, 100 S.Ct. at 567 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)); *Pedalahore,* 745 F.2d at 349.

**23.** *Pedalahore,* 745 F.2d at 349 (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

**24.** *Bean Dredging,* 744 F.2d at 1085.

**25.** *Bean Dredging,* 744 F.2d at 1085.

**26.** *Point Landing, Inc. v. Omni Capital International, Ltd.,* 795 F.2d 415, 419 (5th Cir.1986) (en banc) (per curiam); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1266–69 (5th Cir.1983); Fed. R.Civ.P. 4(e).

**27.** La.Rev.Stat.Ann. § 13:3201(1) (West Supp. 1986). That section·provides:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

**28.** *Pedalahore,* 745 F.2d at 348.

**29.** *Id.;* La.Rev.Stat.Ann. § 13:3201 comments of Louisiana State Law Institute—1964 (West 1968).

**30.** 479 So.2d 883, 887–88 (La.1985).

the opinion described the statute as "adopted by this state to permit the courts of Louisiana to tap the full potential of in personam jurisdiction over nonresidents consistent with the due process clause of the fourteenth amendment."[31] In another 1977 opinion, *Adcock v. Surety Research and Investment Corp.*, the court said, "[t]he applicable statutory provision was designed to allow the courts of this state to exercise the broadest basis of personal jurisdiction over nonresidents permissible under the fourteenth amendment."[32] The court had earlier announced, in *Moore v. Central Louisiana Electric Company, Inc.*, that under the statute a sufficient nexus with Louisiana exists "if (a) the defendant regularly advertises his products or services in the state or (b) carries on some other continuous course of activity there or (c) derives substantial revenue from goods used or consumed or from services rendered in the state. It is not necessary that this activity amount to the doing of business."[33] In the same year, in *Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company*, the court said, "[i]t was the intention of the Louisiana Legislature in its enactment of R.S. 13:3201 to extend the personal jurisdiction of Louisiana courts over nonresidents to the full limits of due process under the Fourteenth Amendment."[34]

Recently, however, two intermediate appellate courts of Louisiana have interpreted the long-arm statute more narrowly. In *Alba v. Riviere*[35] and *Robinson v. Vanguard Ins. Co.*,[36] they have required a direct nexus between the business transacted in Louisiana by the non-resident defendant and the plaintiff's cause of action. This interpretation is based on a literal application of the statutory language: " 'A court may exercise personal jurisdiction over a nonresident ... as to a cause of action *arising from* the nonresident's transacting any business in this state.' "[37]

After these decisions were rendered, a panel of this court in *Farnham v. Bristow Helicopters*,[38] followed them, adopting the same restrictive interpretation. In interpreting Louisiana statutes, we are required to follow the state's courts[39] and when the state decisions appear to us to be conflicting, we are guided by the most recent interpretation.[40] *Farnham* followed this precept.

The decisions in *Alba* and *Robinson*, however, appear to us to be irreconcilable with the apparently clear statements of the Louisiana Supreme Court. Because in diversity cases, as well as federal question cases, service of process may be based on Louisiana statutes, and the long-arm statute is frequently utilized, in federal courts as well as in state courts, it is important that this significant question of law be clarified. We have decided, therefore, to certify the controlling question of Louisiana law in this case to the Louisiana Supreme Court.

The court believes that the question to be certified might be phrased as follows:

Was the service of process made on Garrett Corporation in this case valid under Louisiana Rev.Stat.Ann. § 13:3201(1) (West Supp.1986)?

We disclaim any intention or desire that the Supreme Court of the State of Louisi-

---

31. 389 So.2d 31, 37 (La.1979).

32. 344 So.2d 969, 971 (La.1977).

33. 273 So.2d 284, 287 n. 1 (La.1973).

34. 283 So.2d 687, 689 (La.1973).

35. 457 So.2d 33, 34 (La.App. 4th Cir.), *cert. denied*, 462 So.2d 194 (La.1984).

36. 468 So.2d 1360, 1369 (La.App. 1st Cir.), *cert. denied*, 472 So.2d 924 (La.1985).

37. *Alba*, 457 So.2d at 34 (quoting La.Rev.Stat. Ann. § 13:3201).

38. 776 F.2d 535, 537 (5th Cir.1985).

39. *Holton v. Newsome*, 750 F.2d 1513, 1516 (11th Cir.1985) (per curiam).

40. *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1360 (5th Cir.1983), *cert. denied*, 465 U.S. 1028, 104 S.Ct. 1288, 79 L.Ed.2d 690 (1984).

ana confine its reply to the precise form or scope of the question certified.

We direct counsel for the parties to confer as soon as practical and, within 15 days, to submit to this court a proposed agreed statement of the case and an agreed phrasing of the questions to be certified.[41] If the parties are unable to agree on either the statement of the case or the questions to be certified, the appellant will prepare a proposed statement of each, within 15 days, and, within seven days thereafter, the appellee will prepare and file its proposed objections to and suggested changes to the appellant's suggestions.

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the decision below on the basis of *Farnham v. Bristow Helicopters*, 776 F.2d 535 (5th Cir.1985). Because of the presence of the constitutional question, and because it appears to me that the considerations prompting the majority to certify this case to the Louisiana Supreme Court have been adequately resolved in *Farnham*, I would not certify. As the majority implicitly recognizes, there are no post-*Farnham* Louisiana decisions which would justify our departure from *Farnham*. This circumstance might not be decisive against certification if *Farnham* had overlooked some established line of Louisiana jurisprudence, or some arguably applicable Louisiana statute, or was simply egregiously wrong. But none of these things can be said about *Farnham*.

The majority calls attention to *Farnham*'s reliance on *Alba v. Riviere*, 457 So.2d 33 (La.App. 4th Cir.), *writ denied*, 462 So.2d 194 (La.1984), and *Robinson v. Vanguard Ins. Co.*, 468 So.2d 1360 (La. App. 1st Cir.), *writ denied*, 472 So.2d 924 (La.1985), for the requirement of a "direct nexus between the business transacted in Louisiana by the non-resident defendant and the plaintiff's cause of action" based on the "arising from" language of the in-

troductory portion of LSA–R.S. 13:3201. The majority contrasts this to general statements in several opinions of the Louisiana Supreme Court, such as the language in *Adcock v. Surety Research & Investment Corp.*, 344 So.2d 969, 971 (La.1977), that section 3201 "was designed to allow the courts of this state to exercise the broadest basis of personal jurisdiction over nonresidents permissible under the fourteenth amendment." The majority concludes that "[t]he decisions in *Alba* and *Robinson*, however, appear to us to be irreconcilable with the apparently clear statements of the Louisiana Supreme Court."

In my opinion, however, there is no necessary conflict between the Louisiana Supreme Court opinions cited by the majority and the rationale of *Alba*, *Robinson*, and *Farnham*. Indeed, this very question was addressed in *Farnham*, when it considered and departed from our earlier decision in *Pedelahore v. Astropark, Inc.*, 745 F.2d 346 (5th Cir.1984), which pre-dated *Alba* and *Robinson*, and was expressly rejected in the latter. *Pedelahore* declined to apply the "arising from" language of the introductory portion of section 3201 because *Pedelahore* considered that the Louisiana Supreme Court had "consistently held that the Louisiana long-arm statute extends to the maximum limits permitted by due process." *Id.* at 348. *Pedelahore* relied in this connection on, *inter alia*, *Adcock* and *Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Co.*, 283 So.2d 687 (La.1973), both of which the majority relies upon and views as being irreconcilable with *Farnham*, *Alba*, and *Robinson*. *Farnham* addressed this contention by noting that the language in Louisiana decisions to the effect that "the long-arm statute was to reach the full constitutional limits of due process" could be understood to "only have meant that the legislature intended to reach the limits of due process as to the meaning of 'transacting any busi-

---

41. *See West v. Caterpillar Tractor Company, Inc.*, 504 F.2d 967 (5th Cir.1974); *Allen v. Estate of Carman*, 446 F.2d 1276 (5th Cir.1971).

ness' in R.S. 13:3201(1)." 776 F.2d at 537. *Farnham* also pointed out that decisions containing the "extend to the limits of due process" language did not address the question of whether a nexus was required between the cause of action asserted and the nonresident's activities relating to Louisiana, but rather addressed the different question of whether the relationship between the nonresident's activities and Louisiana was sufficient to meet the requirements of the various subdivisions of section 3201.

While *Farnham* is doubtless not the only permissible reading of the relevant Louisiana decisions, it certainly seems to me to be a reasonable one. In *Adcock*, the issue was whether the defendant's activities constituted "transacting any business in this state" within the meaning of section 3201(a). The *Adcock* court specifically relied on Comment (d) of the Louisiana State Law Institute for its conclusion that "transacting business" was to be broadly interpreted. Nevertheless, the *Adcock* court did not intimate that the cause of action need not arise from the business so transacted. To the contrary, it stated:

> "[T]he statute extends personal jurisdiction of the courts over nonresidents 'transacting any business in this state' *for a cause of action arising from such activity.*" 344 So.2d at 971 (emphasis added).

The language quoted by the majority from *Moore v. Central Louisiana Electric Co.,* *Inc.,* 273 So.2d 284, 287 n. 1 (La.1973), is expressly directed to the situation in which "the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant." *Id.* at 286 n. 1. The "nexus" language quoted by the majority concerns what is necessary to constitute the above-referenced "other reasonable connection"; it is not concerned with the "arising from" requirement of the introductory portion of section 3201. In that context, the "arising from" provision relates to the different requirement that, where the fourth subdivision of section 3201 is relied on, the suit be for the injury which occurred within the state.[1] Similarly to *Adcock*, in *Drilling Engineering*, the issue was what constituted "transacting any business" for purposes of section 3201(a). The *Drilling Engineering* opinion notes that the plaintiff's position, which it ultimately sustained, was that "as a result of defendant's transacting business in this state, it is subject to the personal jurisdiction of our courts *as to a cause of action arising from said activity* under R.S. 13:3201(a)." 283 So.2d at 688 (emphasis added). The court went on to rely on Comment (d) of the Louisiana State Law Institute as a basis for giving "transacting any business" a broad construction, and expressly based jurisdiction on subdivision (a) of section 3201. 283 So.2d at 689. In *Clay v. Clay*, 389 So.2d 31 (La.1979), also

---

1. Subdivisions (3) and (4), formerly (c) and (d), of section 3201 provide:

> "(3) Causing injury or damage by an offense or quasi-offense committed through an act or omission in this state.
>
> "(4) Causing injury or damage in this state by an offense or quasi-offense committed through an act or omission outside of this state *if he* regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state." (Emphasis added).

The quoted language from *Moore* plainly concerns the "if he" requirements of subdivision (4). Here, both the injury and the wrong occurred without the state.

Note should also be taken of subdivision (8) of section 3201, reading as follows:

> "(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream or ["of" obviously intended] commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices."

This suggests that the Louisiana legislature considered the "stream of commerce" theory referred to by the majority and chose to limit its application to instances where the injury or damage occurred in Louisiana. Moreover, to sustain jurisdiction here under the first subdivision (and no other basis is suggested) may well render superfluous the apparently carefully considered limitations implicit in the distinctions between subdivisions (3), (4), and (8).

relied on by the majority, the court relied on *Adcock* for its statement that the Louisiana long-arm statute extends jurisdiction over nonresidents to the full potential "consistent with the due process clause." 389 So.2d at 37. Nevertheless, the court held that jurisdiction was not obtained because, although constitutionally adequate notice was plainly given, nevertheless the technical service requirements of LSA–R.S. 13:3204 (which the court characterized as a part of the long-arm statute) were not complied with. *Id.* Hence, the *Clay* court was not giving a literal application to its language concerning the long-arm statute reaching to the full constitutional maximum; rather, the court insisted that the statutory requirements also be met.

The only case cited by the majority which was decided subsequent to *Robinson* or *Farnham* is *Fryar v. Westside Habilitation Center,* 479 So.2d 883 (La.1985). There, again, the court was addressing the sufficiency of the defendant's contacts with Louisiana, not the relationship between the cause of action and those contacts. The court observed that "[a] nonresident party to a contract consummated in the forum state is subject to the forum state's in personam jurisdiction *on causes of action arising out of the transaction."* 479 So.2d at 888 (emphasis added).

It should also be noted that we are not concerned simply with the "arising from" language in the introductory portion of section 3201, but also with LSA–R.S. 13:3202, which provides, in its entirety:

"When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him."[2]

Nor do *Alba* and *Robinson* stand alone among Louisiana cases in their insistence that the plaintiff's cause of action against a nonresident arise from the nonresident's activities as specified in one or more subdivisions of section 3201. *Robinson,* for example, relies on the opinions in *Rush v. Matson Navigation Co.,* 221 So.2d 265 (La. App. 2d Cir.1969); *Cambre v. St. Paul Fire and Marine Insurance Co.,* 331 So.2d 585 (La.App. 1st Cir.), *writs denied,* 334 So.2d 434, 435 (La.1976); *Hunt v. Fireman's Fund Insurance Co.,* 345 So.2d 1235 (La.App. 1st Cir.1977); and *Gertler v. Gondola Ski Shop, Inc.,* 384 So.2d 856 (La.App. 4th Cir.), *writ denied,* 392 So.2d 682 (La.1980). *See Robinson,* 468 So.2d at 1366–69. As indicated, writs were denied in two of these cases, as well as in *Alba* and *Robinson.* Further, in the recent case of *Drago v. Home Insurance Co.,* 486 So.2d 940, 942 (La.App. 1st Cir.1986), *Robinson* is cited with approval on the "arising from" point.

It seems to me not unreasonable to understand the expression of legislative intention that section 3201 extend jurisdiction to the maximum permitted by due process to relate to the breadth of application of the general language of the various subdivisions of section 3201 (particularly the first, fourth, and eighth), as opposed to reflecting an intention that the "arising from" requirement of sections 3201 and 3202 would be applied, contrary to the plain wording of those statutes, only when the failure to do so would contravene the United States Constitution. It may also be that when the Louisiana long-arm statute was enacted it was felt that the United States Constitution imposed such an "arising from" requirement. Perhaps, however, the Louisiana legislature was willing to extend jurisdiction to constitutional limits only because those limits were thought to include such a requirement. *Cf. Hall v. Helicopteros Nacionales de Colombia, S.A.,* 638

---

**2.** It is to be observed that both section 3202 and the introductory portion of section 3201 speak in terms of a cause of action "arising from" the nonresident's activities as specified in one or more of the various subdivisions of section 3201. "Arising from" arguably requires a closer connection than "related to" or the equivalent. Thus, Justice Brennan, in his dissenting opinion

in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1878, 80 L.Ed.2d 404 (1984), noted that "there is a substantial difference between these two standards for asserting specific jurisdiction," with "related to" being the broader standard. The *Helicopteros* majority did not reach that issue. *Id.* 104 S.Ct. at 1873 n. 10.

S.W.2d 870, 880 n. 6 (Tex.1982) (dissenting opinion of Justice Pope), *rev'd sub nom. Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

At all events, we have thoroughly plowed and replowed this ground in *Pedelahore* and *Farnham.* While there is certainly room for reasonable difference of opinion, I can find nothing significant which *Farnham* overlooked, nor does it seem to me that it is anything other than a fair and eminently supportable construction of Louisiana law. Nothing since *Farnham* casts doubt on it. In these circumstances, I would not certify, particularly as this apparently requires us to decide a constitutional issue left open in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1873 n. 10, 80 L.Ed.2d 404 (1984).