### Eleanor DEININGER

v.

### John DEININGER and Paul McLennon.

### Civ. A. No. 4-87-558-E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 8, 1988.

Eleanor Deininger, pro se.

E. Michael Sheehan, Kelly, Appleman, Hart & Hall, Fort Worth, Tex., for defendant Deininger.

Paul McLennon, Sr., pro se.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Defendant John Deininger has moved the Court to dismiss Plaintiff Eleanor Deininger's alleged cause of action. Deininger submits his Motion to Dismiss pursuant to Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. Deininger argues that: (1) the Court lacks personal jurisdiction over the Defendants in this cause; (2) the Plaintiff has failed to state a claim upon which relief can be granted; and, (3) the Plaintiff's fraud claims are not pled with sufficient particularity. Alterna-

tively, Deininger requests that this action be transferred to the Northern District of Illinois. Defendant Paul McLennon has likewise motioned to dismiss or transfer Plaintiff's action.[1] McLennon also requests leave to adopt the Memorandum of John Deininger submitted in support of Deininger's Motion to Dismiss.

Plaintiff Eleanor Deininger ("Plaintiff") proceeds *pro se* in this cause. She has responded to the Defendants' Motion to Dismiss and, in addition to her Response, she motioned on October 30, 1987, for leave to amend her Complaint. These Motions, as well as the Defendants' Motion to Dismiss, are now ripe for resolution.

## I. Plaintiff's Action

The Plaintiff's Complaint invites the Court to make a rare venture into matters of family law; a jurisdictional dispute, however, prevents it from reaching the rather dubious merits of this lawsuit. Although the Plaintiff requests various forms of relief, she particularly objects to a permanent injunction issued by an Illinois family court, more than 17 years ago, which prohibits her from "maintaining or prosecuting" any further action in that court.[2] The brief history of this litigation gives the Court reason to speculate why such a writ was issued—the Order granting the writ states none. No matter how provocative this speculation may be, the Court must turn its attention to matters at hand, namely, Plaintiff's Complaint. It sets forth two causes of action.

First, the Plaintiff seeks a Declaratory Judgment, pursuant to section 2201 of title 28 of the United States Code, that certain Orders from the Circuit Court of Du Page County in Illinois, entered on May 27, 1969, July 31, 1970, and October 7, 1970, be de-

clared void. As the basis of this request, Plaintiff alleges that she was denied due process of law in regard to the Orders of the Du Page County Court. Specifically, Plaintiff alleges that these Orders were entered against her without notice and an opportunity to be heard. All of the contested Orders were issued in connection with the divorce of Plaintiff and Defendant John Deininger. Defendant Paul McLennon is an attorney. He represented the Plaintiff in the Du Page County Court proceedings until his subsequent discharge or withdrawal from the case.

Second, Plaintiff alleges that the Defendants conspired to defraud her in connection with the issuance of the Du Page County Court Orders. The factual allegations contained in Plaintiff's Original Complaint to support this claim are slim. Plaintiff has, however, attached a copy of her proposed First Amended Complaint to her Motion for Leave to Amend her Original Complaint. Neither Plaintiff's Original Complaint nor her proposed Amended Complaint are particularly cogent when setting forth a fraud cause of action. Based upon her Original and proposed Amended Complaints, the Court believes that the following is, in essence, the Plaintiff's claim.

The Plaintiff states that she "has reason to believe Defendant John Deininger conspired with Defendant McLennon to intentionally mislead [her]."[3] Plaintiff alleges that the Defendants, in furtherance of their conspiracy to defraud, made false representations to the Du Page County Court regarding the Plaintiff's place of residence. Plaintiff insists that the Defendants intentionally failed to give her notice of the hearings from which the Du Page County Court Orders resulted. Plaintiff contends

1. Hereinafter John Deininger and Paul McLennon will be referred to jointly as "Defendants."

2. The Order reads in pertinent part:
   IT IS HEREBY ORDERED that the clerk of this Court shall issue ... a permanent Writ of Injunction absolutely and forever restraining ELEANOR DEININGER, and her agents and attorneys, from maintaining or prosecuting any action against JOHN DEININGER, JR., for custody of the minor children of the parties, for alimony or child support, or for relief

from any order entered in the Circuit Court of Du Page County, except in the Circuit Court for the 18th Judicial Circuit of Illinois, and specifically from prosecuting and maintaining an action against JOHN DEININGER, JR., known as "ELEANOR DEININGER versus JOHN DEININGER, JR. Number 9327-A, in the District Court of Johnson County, Texas." Plaintiff's Amended Complaint at Exhibit VIII.

3. Plaintiff's Original Complaint at p. 7.

that the Defendants made fraudulent misrepresentations to her regarding the scheduling and alleged postponement of the proceedings. Plaintiff concludes that her detrimental reliance upon these alleged misrepresentations constitutes not only a conspiracy but actual fraud itself. As a result of this alleged conspiracy and fraud, Plaintiff seeks compensatory damages for lost child support and alimony, medical expenses, and the costs of providing her children with a higher education.

## II. In Personam Jurisdiction

Defendants attack this Court's ability to properly exercise in personam jurisdiction over them. To support this attack, Defendants first contend that they were not amenable to service under the Texas Long–Arm Statute.

### A. The Long–Arm Statute

■ In diversity actions, two requirements must be met before a federal court can exercise jurisdiction over a nonresident defendant. First, the defendant must be amenable to service under a statute or rule of the forum state.[4] *See, e.g., Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982). Second, even when the requirements of the state's service statute or rule have been complied with, a court's exercise of jurisdiction over a defendant must still be consistent with the due pro-

cess clause of the Fourteenth Amendment of the United States Constitution. *Id.*

To justify personal jurisdiction over a defendant, the Texas Long–Arm Statute sets forth three activities which constitute doing business in Texas. These activities are: (1) contracting by mail with a Texas resident, (2) committing a tort in this state, or (3) recruiting Texas residents for employment. Tex.Civ.Prac. & Rem. Code § 17.042 (Vernon 1986).

In the instant case, Defendants argue that the Plaintiff's Complaint fails to allege facts that establish the Defendants do business in Texas. Additionally, the Defendants argue that Plaintiff's Complaint fails to establish that the alleged acts supporting her fraud claim occurred in whole or in part in Texas. Since the Complaint neither establishes that the Defendants "do business" in Texas nor that the alleged fraud occurred "in whole or in part" in Texas,[5] the Defendants conclude that the Plaintiff has failed to satisfy the requirements of the Long-Arm Statute.

Defendants' argument would, of course, be correct if the Long–Arm statute was the only effective method of serving a nonresident defendant. It, however, is not.

Rule 108 of the Texas Rules of Civil Procedure provides an alternative method of service when the defendant is a nonresident.[6] This Rule allows a plaintiff to avoid

---

**4.** Rule 4(e)(1) of the Federal Rules of Civil Procedure provides:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

**5.** The Texas Long–Arm statute provides:

In addition to other acts that may constitute doing business, a nonresident *does business* in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort *in whole or in part* in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex.Civ.Prac. & Rem. Code § 17.042 (Vernon 1986) (emphasis added).

**6.** Rule 108 provides in pertinent part:

Where the defendant is absent from the State, or is a nonresident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person competent to make oath of the fact in the same manner as provided in Rule 106.... A defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with a citation within this State to the full extent that he may be required to appear and answer under the Constitution of the United States in an action either in rem or in personam.

Tex.R.Civ.P. 108.

the "doing business" requirements of the Texas Long–Arm Statute. A plaintiff asserting a tort claim, for example, can properly serve a nonresident defendant without establishing that the defendant "does business" in Texas. Therefore under this form of service, the defendant is not required to allege that the tort was committed "in whole or in part" in Texas. Tex.Civ.Prac. & Rem. Code § 17.042(2). Rule 108, however, does not expand jurisdictional boundaries to unchecked limits. It has been the policy of this Court for almost ten years that "Rule 108 must be construed in the context of the due process requirements of the United States Constitution since the federal court's exercise of jurisdiction under state law must comport with basic due process requirements." *Grantham v. Aetna Life and Casualty*, 455 F.Supp. 440, 441 (N.D.Tex.1978) (Mahon, J.) (citing *Product Promotions, Inc., v. Cousteau*, 495 F.2d 483, 489 (5th Cir.1974); *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir.1973)).

Plaintiff's Complaint does not state that service was proper under the Texas Long–Arm Statute, nor does Plaintiff allege that service was effected pursuant to Rule 108. In Plaintiff's Response to the Defendants' Motion to Dismiss, she argues, unsuccessfully, that service was proper under the Long–Arm Statute. More importantly, she fails to allege that service *was* proper under Rule 108. Defendants' counsel does not help matters by conveniently ignoring the Rule. The Defendants attack only the validity of service under the Long–Arm Statute and apparently take no position on the issue whether service was proper under the Texas Rules.

The Court does not believe that it would be an unprecedented act of judicial activism to assert that Plaintiff's service was proper under Rule 108. Plaintiff proceeds in this cause *pro se* and thus already labors under a severe disadvantage. It is always tempting to eliminate a potentially meritless complaint at the pleading stage, especially on technical grounds, but such action here would be "another instance of judicial haste which in the long run makes waste." *Dioguardi v. Durning*, 139 F.2d 774, 775 (2d Cir.1944) (Clark, J.). The Supreme Court of the United States unanimously held in *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers...."

■ The Court has reviewed both the form of notice to the Defendants in this cause and the accompanying service returns. The Court finds that a summons and copy of Plaintiff's Complaint were properly served upon the Defendants in the respective Illinois county of their residence by a deputy sheriff. This manner of service is permitted by Rule 106 of the Texas Rules of Civil Procedure [7] and is incorporated by reference into Rule 108. The sheriffs' returns of service are properly executed and comply with Rule 107.[8] As required by Rule 108, the service returns are sworn to by the sheriffs before an authorized state officer (notary public). Although Plaintiff does not assert that service was proper under Rule 108, the Court finds that the form and manner of Plaintiff's service meet the Rule's requirements. Thus service of process in this cause is valid.

B. *The Due Process Requirement: Sufficient Contacts*

Although Rule 108 is a procedural rule for the service of process, it, like the Texas Long–Arm Statute, empowers Texas courts to exercise their jurisdiction as far as the federal constitutional requirements allow.

---

7. Rule 106 provides in pertinent part: "Unless it otherwise directs, the citation shall be served by (a) the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto...." Tex.R.Civ.P. 106(a).

8. Rule 107 provides in pertinent part: "The return of the officer executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by him officially." Tex.R.Civ.P. 107.

*Fox v. Fox,* 559 S.W.2d 407, 409 (Tex.Civ. App.—Austin 1977, no writ). Therefore, although the Plaintiff has established that the Defendants are amenable to service, her task is not yet complete. The Plaintiff must establish that this Court's exercise of jurisdiction does not violate basic due process requirements: namely, that its assumption of personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The determination of this "fairness" issue requires an analysis of the Defendants' contacts with the forum state.

■ A court may base its exercise of personal jurisdiction over a defendant on two separate grounds: (1) "specific" in personam jurisdiction or (2) "general" in personam jurisdiction. *See, e.g., Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367, 1369 (5th Cir.1986); *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986). The type of in personam jurisdiction the Plaintiff seeks to invoke substantially affects the standard under which the Defendants' contacts with the forum state are analyzed. *Starline Optical Corp. v. Caldwell,* 598 Supp. 1023, 1025 (D.N.J.1984) (Stern, J.). The Court will consider first whether it may exercise *specific* in personam jurisdiction over the Defendants.

### 1. Specific Jurisdiction

■ When a cause of action arises out of or is related to a defendant's contacts with the forum state, the forum may exercise its specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). In other words, specific jurisdiction may be invoked if a defendant has only minimal contact with the forum state, provided a nexus exists between the defendant's contacts, the forum, and the litigation. *See Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.

1985). When a defendant challenges the court's jurisdiction prior to trial, the plaintiff bears the burden of establishing a prima facie case that the district court has personal jurisdiction over the nonresident. *See, e.g., D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985); *Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982); *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982). In the instant case, the Plaintiff has failed to produce sufficient prima facie evidence to support this Court's exercise of specific in personam jurisdiction.

■ In opposition to the Defendants' Motion to Dismiss, Plaintiff submits a Brief and an Affidavit in which she states "[t]hat all statements regarding the defendants' actions, business activities and contacts with the State of Texas [contained in the Brief] are true and correct." [9] Plaintiff has also attached a copy of a newspaper article which substantiates some of the Plaintiff's allegations regarding the business activities of Defendant John Deininger's corporate employer. Summarized below are the Defendants' alleged contacts with the State of Texas as recounted in the Plaintiff's Brief and adopted by reference in her accompanying Affidavit.

a. The Defendants' Alleged Contacts with Texas

It is undisputed that the Defendants are residents of the State of Illinois. Defendant John Deininger is the President of Signode Corporation which maintains its corporate headquarters in Glenview, Illinois. From sometime in 1982 until August of 1986, Defendant Deininger was not only an officer of the Signode Corporation but a 27 percent co-owner. In August of 1986, the Signode Corporation was purchased by Illinois Tool Works, Inc. Despite the sale of his interest, Defendant Deininger retained his position as president of the corporation. Plaintiff alleges that Signode maintains a fully staffed office and warehouse in Dallas, Texas. Plaintiff further alleges that Signode owns a subsidiary corporation, Mi-

**9.** *See* Plaintiff's Response to Defendants' Motion to Dismiss, Affidavit of Eleanor Deininger (Attachment).

nigrip. Minigrip owns land in Seguin, Texas, and has designated this land as the site for a future production facility. Finally, Plaintiff alleges that both Signode and Minigrip have maintained continuous and systematic contacts with and business activities in the State of Texas.

Plaintiff's allegations regarding the contacts of Defendant Paul McLennon with the State of Texas are not as lucid. Defendant McLennon is an attorney licensed to practice law in the State of Illinois. Plaintiff contends that "[t]hrough his contact with James Ferguson," [10] an attorney residing and practicing law in Cleburne, Texas, McLennon agreed to represent her in the Du Page County Court proceedings. Plaintiff alleges that McLennon advised her that a hearing, scheduled on July 31, 1970, had been cancelled, when in fact, the hearing was not. Plaintiff concludes that this left her without legal representation at the hearing, since neither she, nor apparently McLennon, appeared. Plaintiff further alleges that McLennon, through James Ferguson, "conspired to have her travel to Illinois with the children on the pretense that there was to be a hearing on the reinstatement of alimony." [11] Plaintiff contends, however, that no hearing was scheduled because McLennon allegedly failed to notice John Deininger, petitioner in the Du Page County divorce action, or his attorney of the proceeding. Oddly, Ferguson, an alleged co-conspirator, is not made a party to this action. Finally, Plaintiff alleges that McLennon failed to inform her of John Deininger's numerous pleadings filed in the divorce action. Plaintiff concludes that "[b]oth he and James Ferguson knew of Defendant Deininger's petitions, but kept all such information from the Plaintiff. Defendant McLennon's conduct was deliberate and intentional." [12]

b. The Lack of a Nexus Between the Contacts and the Action

The Plaintiff has failed to produce prima facie evidence of specific in personam jurisdiction in this cause. As to Defendant John Deininger, Plaintiff fails to allege any contacts that John Deininger had with the State of Texas out of which this cause of action arises. In this action, Plaintiff seeks a declaratory judgment voiding certain Orders issued by a family court in Du Page County, Illinois. No party disputes the fact that these Orders were issued in Illinois, out of proceedings that took place in that State, and by a court operating under the color of Illinois law. Plaintiff argues that these Orders are invalid because they emanated from proceedings of which she was not given notice. Yet, the only contacts that John Deininger appears to have with the State of Texas are, in essence, those of his corporate employer, all totally unrelated to the issuance of the Du Page County, Illinois, Court Orders.

Desperately, Plaintiff asserts that John Deininger's "fraudulent course of conduct in avoiding a Texas [Court] child support order and his blatant refusal to pay higher educational expenses for the children has forced the Plaintiff to seek and obtain educational expense monies from the State of Texas and the federal government...." [13] Plaintiff contends that John Deiningers' actions placed his responsibilities "on the shoulders of the Plaintiff and the State of Texas," thus creating a nexus between the contacts, the forum, and the cause of action. While the argument is novel, it is far from compelling. The Plaintiff has simply failed to establish a relationship between John Deininger's contacts with Texas and the portion of this litigation which would, if Plaintiff were successful, void the Orders of the Du Page County Court. In light of that failure, maintaining this suit in Texas would offend traditional notions of fair play and substantial justice. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

As to her second cause of action against both Defendants, John Deininger and Paul

---

10. Plaintiff's Response to Defendants' Motion to Dismiss at p. 4.

11. *Id.*

12. Plaintiff's Response to Defendant's Motion to Dismiss at p. 4.

13. Plaintiff's Response to Defendants' Motion to Dismiss at p. 3.

McLennon, the Plaintiff has likewise failed to present prima facie evidence of specific in personam jurisdiction. Plaintiff's second cause of action alleges that John Deininger and McLennon conspired and defrauded her in regard to the issuance of the Du Page County Court Orders. Plaintiff, however, has not suggested a single activity by either Defendant which was a part of this alleged conspiracy or fraud *and which took place in Texas.* Plaintiff alleges that the Defendants conspired to have her Texas attorney, James Ferguson, send the Plaintiff to Illinois on the pretense that an alimony hearing would be held.[14] As best this Court can determine, Ferguson seems to be the only person who made, or might have made, an alleged fraudulent misrepresentation to the Plaintiff in Texas. But, as noted before, Ferguson is not a party to this action. Although no explanation for Ferguson's non-joinder is given in the pleadings, the reason appears obvious: Ferguson is a Texas resident, and his joinder would destroy complete diversity in this cause.

Plaintiff's alleged cause of action for conspiracy to defraud and fraud does not end there, however. Her Amended Complaint continues, asserting that

Defendant McLennon's role was to masquerade as the Plaintiff's attorney, but not to file an appearance, so when things went wrong ... he could hide behind the cloak of the "withdrawal" (which ultimately he did). He was to instruct the Plaintiff that the hearing was postponed for two weeks so she would leave the children with Carl Henninger [John Deininger's attorney in the divorce action].... Furthermore, he [McLennon] never noticed Defendant Deininger or his attorney ... at any time between November, 1969, when he originally entered the case, to the date of the hearing on July 31, 1970. Carl Henninger arranged to have the hearing postponed from June 22, 1970 to July 30, 1970—*exactly* two

years after the divorce in order to implement the "two year rule" of Illinois law [statute prohibiting modification of custody order within a two-year period following its issuance....][15]

Despite the additional allegations contained in Plaintiff's Amended Complaint, the acts constituting the alleged conspiracy and fraud appear to have taken place entirely in Illinois. Since none of the alleged acts underlying the Plaintiff's second cause of action occurred in Texas, the Plaintiff has failed to establish a relationship between the Defendants, John Deininger and Paul McLennon, the forum, Texas, and the litigation, her second cause of action for conspiracy and fraud.[16] Absent a prima facie showing of such a relationship, this Court may not properly exercise its specific in personam jurisdiction.

### 2. General Jurisdiction

Even when specific in personam jurisdiction is lacking, a court may still exercise its general jurisdiction over a person based upon his or her contacts with the forum which are unrelated to the controversy. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986). A review of recent cases rendered by the Fifth Court of Appeals, however, demonstrates that Court's unwillingness to allow general in personam jurisdiction to be invoked absent showing of substantial and significant contacts by a defendant with the forum state.

In *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986), for example, the Fifth Circuit Court of Appeals found general in personam jurisdiction to exist. But the Plaintiff, Holt Oil & Gas, was required to make a substantial showing to support its jurisdictional claim.

Holt Oil & Gas was a Texas corporation with its principal place of business in Dal-

---

**14.** *See* Plaintiff's Amended Complaint at pp. 15–16.

**15.** Plaintiff's Amended Complaint at pp. 15–16 (emphasis original).

**16.** It is also important to note that the Plaintiff has failed to establish that her cause of action is

*sufficiently related* to the Defendant's contacts with the forum state so as to render this Court's exercise of specific in personam jurisdiction proper. *See, e.g., Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367, 1370 (5th Cir.1987).

las. *Id.* at 776. The defendant, Ralph Harvey, was an Oklahoma resident who invested in oil gas drilling ventures. Holt brought an action against Harvey in the United States District Court for the Northern District of Texas seeking to recover an unpaid share of expenses for an oil and gas drilling venture. Harvey entered into a contract with Holt Oil & Gas; mailed three checks from Oklahoma to Texas in partial performance of its contractual obligations; and, engaged in extensive telephonic written communication with Holt. *Holt Oil & Gas,* 801 F.2d at 777–78. Even though these activities were related to the cause of action and the forum state, the Fifth Circuit Court of Appeals held that these limited contacts were insufficient to support the exercise of specific jurisdiction. *Id.* at 778. The Court found, however, that other contacts Harvey had with the State of Texas would support the exercise of general jurisdiction. *Id.* at 779–80.

Harvey attended college and was at one time employed in Texas; Harvey owned real property in Texas; and Harvey frequently traveled to Texas for recreation and to visit his children. *Id.* at 779. Harvey transacted a great deal of business in Texas. He had extensive business dealings with a Dallas record company in which he invested heavily and on whose board of directors he served. Harvey was the sole shareholder of an oil company which had drilled several wells in Texas and had been involved in litigation in Texas. Harvey traveled to Texas on several occasions in connection with these activities. The Court held while none of these various contacts alone would support an exercise of general jurisdiction, Harvey's contacts *in toto* were sufficient to constitute the kind of continuous and systematic contacts due process requires. The Court concluded that Harvey had sufficient minimum contacts to support the exercise of general in personam jurisdiction.[17]

In the instant case, the contacts of Defendants Deininger and McLennon with the State of Texas pale in comparison to those required in *Holt Oil & Gas* to support the exercise of general in personam jurisdiction. McLennon alleges in an Affidavit supporting his Motion to Dismiss that he has never practiced law, done business, nor in fact, ever been in Texas. Nothing in the Plaintiff's Response to this Motion or in her Original or Amended Complaints appears to controvert this statement. As to Defendant Deininger, the record before the Court indicates that he has no contacts with the State of Texas other than those of his corporate employer, the Signode Corporation. Although Signode's contacts with the State of Texas could be considered substantial, the Plaintiff does not allege that Defendant Deininger is personally involved in these activities. No allegation is made that he travels to or conducts business in Texas on Signode's behalf. Furthermore, the Plaintiff does not allege Defendant Deininger is in any way responsible for the activities of his corporate employer in Texas or its subsidiary, the Minigrip Corporation. Thus, the Plaintiff has failed to demonstrate a prima facie case for this Court's exercise of general in personam jurisdiction over the Defendants Deininger and McLennon.

Based upon the pleadings, affidavits, and evidence submitted in support of and in opposition to the Defendants' Motion to Dismiss, the Court finds the contacts of John Deininger or Paul McLennon with the State of Texas, if any, are not "sufficiently systematic and continuous to support a reasonable exercise of [specific or general in personam] jurisdiction." *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir.1985) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Perkins v. Benquet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).

17. *See also Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367 (5th Cir.1986). In *Petroleum Helicopters,* the defendant had substantial contacts with the forum state. The Defendant's contacts, however, were directly related to the litigation. Despite the defendant's substantial contacts with the forum state, the Fifth Circuit concluded that general in personam jurisdiction did not exist. The Court of Appeals did go on to determine that, while general jurisdiction was lacking, the plaintiff's cause of action was *sufficiently related* to the Defendant's activities in the forum state to support the exercise of specific in personam jurisdiction. *Id.* at 1370–71.

## III. ORDER

For the reasons stated above, the Courts finds in personam jurisdiction over the defendant lacking in this district. The Court ORDERS this matter TRANSFERRED to the United States District Court for the Northern District of Illinois, pursuant to title 28, section 1631 of the United States Code.

It is further ORDERED that Defendant Paul McLennon's Motion for leave to adopt the Memorandum of John Deininger submitted in support of Deininger's Motion to Dismiss is GRANTED.

The Plaintiff submitted her Amended Complaint concurrently with her Motion for Leave to Amend. The Court considered facts contained in the Plaintiff's Amended Complaint when determining this jurisdictional dispute. Thus, it is further ORDERED that Plaintiff's Motion for Leave to Amend is GRANTED.